AMERICAN TRAVEL CORPORATION v. CENTRAL CAROLINA BANK & TRUST COMPANY

No. 8110SC753

(Filed 1 June 1982)

1. **Courts § 9.4— denial of summary judgment—summary judgment by second judge improper**

   In a suit against a bank alleging the bank's negligence in accepting checks for deposit without proper endorsement and conversion of the checks in which plaintiff's motion for summary judgment on the issue of liability was denied by one superior court judge, a second judge could not thereafter allow plaintiff's subsequent motion for summary judgment on the issues of liability and damages.

2. **Banks and Banking § 11.1; Uniform Commercial Code § 33— unauthorized endorsement of checks—ratification**

   In a travel corporation's action against a bank for the conversion of checks by payment pursuant to unauthorized endorsements, the evidence on motion for summary judgment presented a genuine issue of material fact as to whether plaintiff ratified the unauthorized endorsements on the checks. G.S. 25-3-404.

APPEAL by defendant from *Britt, Judge.* Order entered 5 January 1981 and judgment entered 6 January 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 5 April 1982.

The circumstances giving rise to this litigation evolved from an agreement between plaintiff, American Travel Corporation

(hereinafter ATC), and Ralph E. Breshears, who was, at the time of the agreement, president and group sales director of ATC. ATC was engaged in the business of arranging and promoting both retail and group sales of travel and travel planning services. On 12 June 1974, the parties executed an agreement whereby Mr. Breshears purchased the sales rights and income for and from ATC's group travel accounts. Mr. Breshears became the exclusive soliciting agent for the group travel accounts and was entitled to receive monthly all group travel gross profits (gross proceeds paid to ATC less all related expenses incurred by ATC). In the event that expenses exceeded receipts, Mr. Breshears was responsible for reimbursing ATC for the difference. Mr. Breshears leased space in the main ATC office; maintained a "house account" for expenses incurred in his business operations; and was permitted to use the title " 'President, American Travel' for good will and in furtherance of the performance of this Agreement," such use to be "titular only and will not include any right whatever to pledge the credit, transact business or incur liability on the part of American Travel."

In late 1975 Mr. Breshears met with John C. Lennon, Jr., Vice President and Raleigh City Executive of Central Carolina Bank and Trust Company (hereinafter CCB), to discuss the possibility of that bank's role in extending credit or otherwise providing financial assistance to Breshears Enterprises, the company through which Mr. Breshears was conducting his business. Howard E. Hentz, Vice President of American Defender Life Insurance Company, was present at one of the initial meetings between Mr. Breshears and Mr. Lennon. American Defender held the controlling interest in ATC, and Mr. Hentz participated in the negotiations in order to verify Mr. Breshears's need for operating capital to continue the group travel aspects of ATC and to explain the relationship between Mr. Breshears and ATC. As a result of these negotiations, Mr. Breshears obtained a line of credit with CCB, and ATC established a checking account with that bank. Mr. Breshears's name did not appear on the corporate resolutions or the signature cards pertaining to this account.

Between January of 1977 and April of 1978, approximately sixty-one checks made payable to ATC were endorsed in some manner by Mr. Breshears and deposited in the CCB account of Breshears Enterprises. For the most part the endorsements were

made with a stamp consisting of the words, "American Travel Corp. For Deposit Only To Central Carolina Bank Holly Park Branch ACCT. --- ." The account number in each case was the account number at CCB for a Breshears Enterprises, Inc. account. On 8 April 1978, ATC unilaterally terminated Breshears's relationship with ATC, claiming that he had breached the terms of the 12 June 1974 agreement. Shortly thereafter ATC filed suit against CCB, alleging the bank's negligence in accepting checks for deposit without proper endorsement and conversion of the checks. ATC sought damages in the amount of $345,313.91.[1]

In its answer, CCB denied that the endorsements on the subject checks were forged or unauthorized and further defended on the grounds that Mr. Breshears, as president of ATC, had apparent authority to transact business on behalf of ATC, upon which authority CCB relied; that with knowledge of the fact that Mr. Breshears was negotiating checks made payable to ATC, ATC negligently failed to inform CCB that Mr. Breshears allegedly did not have authority to act on its behalf; and that the proceeds of any such checks had been credited to or paid for the benefit of ATC and others entitled to receive benefits therefrom, resulting in no damage to ATC.

Plaintiff moved for partial summary judgment on the issue of liability, which motion was denied by order signed and dated 13 June 1980. On 4 December 1980, defendant moved for summary judgment, and pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, plaintiff again moved for summary judgment. By order dated 6 January 1981, Judge Britt denied defendant's motion and granted plaintiff's motion, allowing plaintiff damages of $356,578.49 (the amount representing the total of the allegedly converted checks), $26,800.00 (pursuant to N.C.G.S. 75-16), and $3,350.00 in attorneys' fees.

Defendant appeals from the granting of plaintiff's motion and the denial of its own motion for summary judgment.

---

1. ATC, in its original complaint, under similar facts and allegations, sought damages in the amount of $107,606.65 from Capitol National Bank. This suit against CNB was later dismissed without prejudice.

*Reynolds & Howard, by Ted R. Reynolds and E. Cader Howard, for plaintiff appellee.*

*Stubbs, Cole, Breedlove, Prentis & Poe, by Richard F. Prentis, Jr., for defendant appellant.*

*Edmund D. Aycock, General Counsel, for The North Carolina Bankers Association, amicus curiae.*

*Sanford, Adams, McCullough & Beard, by E. D. Gaskins, Jr. and William George Pappas, for United Carolina Bank, amicus curiae.*

MARTIN (Harry C.), Judge.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

[1] Under the authority of *Carr v. Carbon Corp.*, 49 N.C. App. 631, 272 S.E. 2d 374 (1980), *disc. rev. denied*, 302 N.C. 217 (1981), a motion for summary judgment denied by one superior court judge may not be allowed by another superior court judge on identical legal issues. *See also Biddix v. Construction Corp.*, 32 N.C. App. 120, 230 S.E. 2d 796 (1977). This rule is based on the premise that no appeal lies from one superior court judge to another. Moreover, as pointed out in *Carr*, to allow an unending series of motions for summary judgment "would defeat the very purpose of summary judgment procedure, to determine in an expeditious manner whether a genuine issue of material fact exists and whether the movant is entitled to judgment on the issue presented as a matter of law." 49 N.C. App. at 634, 272 S.E. 2d at 377.

The above-stated rule does not apply to interlocutory orders given in the progress of the cause. *Id.* Plaintiff contends that because it first moved for partial summary judgment on the issue of liability, the order denying the motion was interlocutory and the subsequent motion for summary judgment on the issues of liability and damages was properly granted. We disagree. "An order is merely interlocutory if it does not determine *the issue* but directs some further proceeding preliminary to a final decree." *Id.* at 633, 272 S.E. 2d at 376 (emphasis ours). Whereas an order denying summary judgment on the issue of liability may be interlocutory in the sense that it is not immediately appealable, "[s]uch a ruling is determinative as to the issue presented." *Id.* In

his order denying plaintiff's motion for summary judgment, Judge Preston determined as a matter of law that plaintiff was not entitled to judgment on the issue of liability. *Yount v. Lowe*, 288 N.C. 90, 218 S.E.2d 563 (1975). The issue may not be relitigated by way of a second motion for summary judgment before a different judge. The trial court erred in granting summary judgment for plaintiff.

We believe that both the language and the policy behind N.C.R. Civ. P. 56 contemplate a single hearing on a motion for summary judgment involving the same case on the same legal issues. Rule 56(c) provides that judgment shall be rendered if pleadings and other supporting materials show that there is no genuine issue as to any material fact and "that *any party* is entitled to judgment as a matter of law." (Emphasis ours.) Rule 56(f) permits the opposing party to move for additional time to obtain affidavits or complete discovery essential to justify his opposition. Moreover, "[o]rdinarily it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." *Conover v. Newton*, 297 N.C. 506, 512, 256 S.E.2d 216, 220 (1979). Generally, motions for summary judgment should not be decided until all parties are prepared to present their contentions on all the issues raised and determinable under Rule 56. Piecemeal litigation of motions for summary judgment is to be avoided.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

[2] Defendant argues that it is entitled to summary judgment based on the issue of ratification. We note at the outset that plaintiff is in error in assuming that defendant must have acted in a commercially reasonable manner before being permitted to take advantage of this defense. While it is true that a bank must act in good faith and in accordance with reasonable commercial standards in order to raise a negligence defense under N.C.G.S. 25-3-406, N.C.G.S. 25-3-404 does not require such a showing:

Unauthorized signatures.—(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it . . . .

(2) Any unauthorized signature may be ratified for all purposes of this article.

The facts of this case, in addition to raising issues of preclusion or estoppel, raise a separate issue of ratification under an agency theory.

Under N.C.G.S. 25-3-419 an instrument is converted when it is paid over a forged or unauthorized endorsement. Logically, when an unauthorized signature is ratified, it becomes authorized and conversion is no longer possible. Ratification is defined as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency § 82 (1958). "Ratification requires intent to ratify plus full knowledge of all the material facts." *Contracting Corp. v. Bank of New Jersey*, 69 N.J. 352, 361, 354 A.2d 291, 296 (1976). It "may be express or implied, and intent may be inferred from failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *Id.* Upon a showing of ratification, defendant would be entitled to judgment as a matter of law. *Id.*

In support of its defense of ratification, defendant offers the following:

1. Mr. Breshears testified that at the time of the initial meetings with CCB, he was not operating under the terms of the 12 June 1974 contract and had never intended to do so. About a month after the contract was signed, he "wrote to Mr. Hentz and explained to him that certain things were not correct and were not feasible to even conduct business . . . and how we would have to operate. I did not tell this to CCB at the time of the meeting in 1976 or at any time, until two years later."

2. The same bookkeeper worked for the Group Travel division and ATC.

3. Beginning in 1976 a series of memos from Mr. Hentz to Mr. Breshears indicated that ATC was concerned that Mr. Breshears was making unauthorized use of his position as president. A memorandum dated 8 September 1977 stated that:

American Travel Corp. v. Central Carolina Bank

There may have been previous occasions where remittances from customers of American Travel have become deposited, or co-mingled in accounts not held in the name and control of American Travel Corporation. *Specifically, to the account of Breshears Enterprises, Inc. . . . . This memorandum is not to question motives nor condemn specific past practices;* but in the conduct of all future business in behalf of American Travel Corporation the following guidelines must be invariably observed. [Emphasis ours.]

Not until after April 1978 was CCB made aware of the practices which ATC felt, in 1977, that it could not condemn.

Based on the foregoing, we can conclude that ATC had full knowledge of all the material facts with respect to Mr. Breshears's actions. However, to constitute ratification as a matter of law, the conduct must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose. Restatement (Second) of Agency § 83 (1958). While it may be inferred that ATC's decision to postpone notifying the bank or dismissing Mr. Breshears was a calculated effort to overlook any alleged wrongdoing in order to reap the benefits of Mr. Breshears's business acumen, such inference raises questions of fact best left for jury determination. Defendant is therefore not entitled to summary judgment on the issue of ratification.

As a matter of law plaintiff is not entitled to recover the proceeds of check 36C. ATC drew this check, in the amount of $19,000, payable to CCB. Shortly after depositing the check in a Breshears Enterprises account, Mr. Breshears apologized to Mr. Hentz for the mistake and repaid the amount to ATC. Both Mr. Hentz and plaintiff's bookkeeper admitted that the amount had been repaid. Defendant is entitled to partial summary judgment with respect to plaintiff's claim based upon check 36C.

MOTION TO SET ASIDE ENTRY OF DEFAULT

Finally, defendant assigns as error the trial court's granting of plaintiff's motion to set aside entry of default against plaintiff on defendant's counterclaim for recoupment, which defendant alleges was a claim for affirmative relief to which no reply was filed.

Defendant's claim was denominated a "Second Defense and/or Equitable Set Off, Recoupment, or Counterclaim Based Upon Unjust Enrichment." We agree with plaintiff that the gravamen of defendant's claim is that plaintiff's damages should be reduced to the extent that the proceeds of the converted checks have been paid for the benefit of American Travel or others. Rather than seeking an affirmative recovery, defendant is seeking to mitigate plaintiff's damages.

To summarize our holding:

We affirm the setting aside of the entry of default against the plaintiff on defendant's second defense.

We reverse Judge Britt's summary judgment in favor of the plaintiff.

Defendant is entitled to summary judgment with respect to check 36C.

In all other respects we affirm the denial of summary judgment to the defendant.

Chief Judge MORRIS and Judge CLARK concur.