MILDRED JONES v. ALL AMERICAN LIFE INSURANCE COMPANY

No. 836SC360

(Filed 5 June 1984)

**1., Rules of Civil Procedure § 56— affidavits in opposition to summary judgment motion not timely filed—court's discretion to allow additional time**

The trial court had authority under G.S. 1A-1, Rule 56(f) to allow defendant additional time to file affidavits in opposition to plaintiff's motion for summary judgment, and the trial court did not abuse its discretion in so allowing.

**2. Insurance § 35— issue as to whether plaintiff killed or procured the killing of insured—right to life insurance proceeds—disqualification under common law**

Although plaintiff did not fit the statutory definition of "slayer" because she had not been convicted of killing the insured, G.S. 31A-3(3), defendant's evidence that plaintiff killed or procured the killing of the insured nevertheless created a common law defense to plaintiff's claim for life insurance proceeds, and the defense was properly submitted to the jury. The "preponderance of the evidence" standard of proof applied to this civil action.

**3. Evidence § 15— irrelevant evidence admitted—not prejudicial**

In an action seeking payment of insurance proceeds, testimony that there were tire tracks beside the insured's body was irrelevant; however, it had no probative value and could not have prejudiced plaintiff in the context in which it was offered.

**4. Evidence § 25— use of slides of body to illustrate medical examiner's testimony—proper**

In an action to compel payment of life insurance proceeds, use of slides of the insured's body to illustrate the medical examiner's testimony was proper where the testimony was relevant to defendant's theory of the case.

**5. Evidence § 15.2— evidence having probative value and properly admitted**

In an action to compel payment of life insurance proceeds where defendant insurance company refused to pay the policy proceeds to plaintiff on the ground that she had murdered the insured, testimony that plaintiff's son did not cooperate with investigating officers who came to her house with a search warrant had some probative value and was properly admitted where one of defendant's theories was that plaintiff procured her sons to kill the insured.

**6. Evidence § 33— statement offered to prove truth of matter asserted—no hearsay**

In an action to compel payment of life insurance proceeds where defendant refused to pay on the ground that plaintiff had murdered the insured, testimony that the insured had stated that he was going to change the beneficiary of his life insurance policy was not hearsay since it was not offered to prove the truth of the matter asserted.

Judge PHILLIPS dissenting.

APPEAL by plaintiff, and cross-appeal by defendant, from *Strickland, Judge.* Judgment entered 19 November 1982 in Superior Court, HALIFAX County. Heard in the Court of Appeals 5 March 1984.

Plaintiff was the named beneficiary of a life insurance policy issued by defendant on the life of Felbert Hilliard, who died of a gunshot wound between 6:00 p.m. and 2:00 a.m. on 17-18 June 1981. Defendant refused to pay the policy proceeds to plaintiff on the ground that she had murdered Hilliard, and plaintiff brought this action seeking to compel payment. Judgment was entered for defendant, barring any recovery by plaintiff of proceeds under the policy, upon a jury verdict that plaintiff willfully and unlawfully killed or procured the killing of Hilliard.

Plaintiff appeals.

*Frank W. Ballance, Jr., for plaintiff appellant.*

*Allsbrook, Benton, Knott, Cranford & Whitaker, by J. E. Knott, Jr., and L. McNeil Chestnut, for defendant appellee.*

WHICHARD, Judge.

### PLAINTIFF'S APPEAL

[1] Plaintiff contends the court erred in considering defendant's affidavits in opposition to her motion for summary judgment when the affidavits were not filed in a timely manner. Plaintiff's motion for summary judgment was initially heard on 24 May 1982, at which time defendant did not have proper affidavits in opposition. The court exercised its discretion in regulating trial proceedings, and its discretion under G.S. 1A-1, Rule 56(f), by allowing defendant ten additional days to file affidavits. Defendant filed its affidavits on 29 July 1982, and the court apparently considered those affidavits in denying plaintiff's motion on 12 August 1982.

The court had authority under G.S. 1A-1, Rule 56(f) to allow defendant additional time. It followed the preferred practice of waiting until discovery was complete, and the contentions of both parties were properly presented, before ruling on the motion. *See American Travel Corp. v. Central Carolina Bank,* 57 N.C. App.

437, 441, 291 S.E. 2d 892, 895, *disc. rev. denied*, 306 N.C. 555, 294 S.E. 2d 369 (1982). We find no abuse of discretion.

Plaintiff presents several contentions related to the single question of whether the court erred in allowing a trial and jury verdict on the issue of whether plaintiff killed or procured the killing of Hilliard. Defendant's evidence showed the following:

Hilliard died of a small caliber bullet wound to his head. Plaintiff owned a twenty-five caliber pistol.

Plaintiff and Hilliard had lived together from 1978 to 1981. About two months before his death Hilliard left plaintiff and began living with his father.

Plaintiff was the beneficiary of Hilliard's life insurance policy. Shortly before his death Hilliard stated that he intended to change the beneficiary.

Law enforcement officers searched plaintiff's house and car the day after Hilliard's death. The house carpet was damp from a recent steam cleaning, and the bed sheets had just been washed. Plaintiff denied that she had attempted to clean up any blood. A forensic serologist employed by the S.B.I. conducted a luminol test, however, which revealed blood residue on the bed and carpet.

A blood clot was discovered on the rear bumper of plaintiff's car which matched Hilliard's blood type. The floor mat in the trunk of plaintiff's car had been removed, and the trunk had been washed out. The trunk contained rust-like material. A piece of carpet containing rust-like material was discovered in an incinerator in plaintiff's yard. Hilliard's body contained linear abrasions and a tire or grease mark, which suggested that it had been dragged out of a car trunk.

Hilliard died between 6:00 p.m. and 2:00 a.m. on 17-18 June 1981. Plaintiff was at work from 2:00 p.m. until midnight on 17 June 1981, but her eighteen and nineteen-year-old sons were at her house. Hilliard was last seen alive by a fellow employee who had left him at plaintiff's house at 4:45 p.m. that evening.

[2] The foregoing circumstantial evidence sufficed to create an issue of fact for the jury as to whether plaintiff killed or procured

the killing of Hilliard. She had a motive to kill him, he was killed after stopping at her house, and considerable physical evidence suggested that he had been killed there and that his body had been removed in her car. Plaintiff's sons were available to perform or assist with the killing, regardless of whether she was present. Under the standard of proof applicable to ordinary civil actions, *viz.*, proof by the preponderance of the evidence, *Wyatt v. Queen City Coach Co.*, 229 N.C. 340, 342, 49 S.E. 2d 650, 652 (1948), such evidence was adequate to support the verdict.

Plaintiff never was charged in a criminal action with the killing of Hilliard, and she contends that the absence of a criminal conviction bars defendant from using a "slayer" defense to her action for the insurance proceeds. Although plaintiff does not fit the statutory definition of "slayer" because she has not been convicted of killing Hilliard, G.S. 31A-3(3), she nonetheless is barred by the common law from receiving the proceeds. "It is a basic principle of law and equity that no [one] shall be permitted to take advantage of his [or her] own wrong, or [to] acquire property as a result of his [or her] own crime." *Garner v. Phillips*, 229 N.C. 160, 161, 47 S.E. 2d 845, 846 (1948). This common law rule survived the enactment of G.S. 31A, Article 3, and it applies to cases outside the purview of the slayer statute. *Quick v. United Benefit Life Ins. Co.*, 287 N.C. 47, 56-57, 213 S.E. 2d 563, 569 (1975). Defendant's evidence that plaintiff killed or procured the killing of Hilliard thus created a common law defense which properly was submitted to the jury. Plaintiff's motions for summary judgment, directed verdict, judgment notwithstanding the verdict, and a new trial therefore were properly denied.

Plaintiff contends that if defendant's evidence did create a legal defense, it should be held to the criminal standard of proof, *viz.*, proof "beyond a reasonable doubt." *See State v. Riera*, 276 N.C. 361, 367, 172 S.E. 2d 535, 539 (1970). She cites no authority in support of this position. Plaintiff brought a civil action, and the "preponderance of the evidence" standard thus applies. *In re Wilkins*, 294 N.C. 528, 550-51, 242 S.E. 2d 829, 842 (1978). "The required degree of proof is not changed by the fact that the conduct with which a party is charged amounts to a crime." 2 H. Brandis, *North Carolina Evidence* § 212, at 162 (2d ed. 1982).

Plaintiff assigns error to several evidentiary rulings. We find no prejudicial error.

[3] Plaintiff objected to testimony that there were tire tracks beside Hilliard's body. Because no evidence connected the tracks with plaintiff or her car, this testimony was not relevant. For the same reason, however, it had no probative value and could not have prejudiced plaintiff in the total context in which it was offered.

Plaintiff argues that witnesses in addition to the person who performed the luminol test erroneously were allowed to testify concerning the purposes and results of the test. This argument has no basis in the evidence because, at the time plaintiff objected, the witnesses only testified that they observed the luminol test being performed, and as to what they observed.

[4] Plaintiff objected to use of slides of Hilliard's body to illustrate the medical examiner's testimony. The slides illustrated markings on the body and other features which were the subject of the testimony. The testimony was relevant to defendant's theory of the case, especially to the suggestions that linear markings on Hilliard's back were made by the rear bumper of plaintiff's car, and that the blood clot on the bumper was left there when the body was removed from the trunk. The court thus properly allowed the slides to be used for illustrative purposes.

[5] Plaintiff objected to testimony that her son did not cooperate with investigating officers who came to her house with a search warrant. One of defendant's theories was that plaintiff procured her sons to kill Hilliard. Testimony as to one son's opposition to an investigation thus had some probative value and properly was admitted.

[6] Plaintiff objected, on hearsay grounds, to testimony that Hilliard had stated that he was going to change the beneficiary of his life insurance policy. This testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Regardless of whether Hilliard actually intended to change the beneficiary, the fact that he told several people he would was evidence from which the jury could infer that plaintiff knew she was about to lose her status as beneficiary, thereby giving her a motive to kill Hilliard.

Plaintiff contends the court erred in refusing to allow a deputy sheriff to testify as to whether a warrant had been issued or a

bill of indictment submitted against her. Plaintiff subsequently was allowed to testify, however, that she had not been arrested and charged with murder, and that no bill of indictment had been served on her. Assuming, *arguendo*, that the original exclusion was error, it clearly was rendered harmless by plaintiff's subsequent testimony.

## DEFENDANT'S CROSS APPEAL

Defendant acknowledges that it would benefit from the relief sought in its cross appeal only in the event of a remand for further proceedings. In light of our disposition of plaintiff's appeal, we thus need not respond to the cross appeal.

No error.[1]

Chief Judge VAUGHN concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

Though I agree that the evidence was sufficient to establish that the insured, Felbert Hilliard, was killed in plaintiff's house sometime during the eight-hour period referred to, in my opinion it was not sufficient to establish that plaintiff either killed him or procured his killing. The evidence leads only to surmise and speculation; the greater likelihood that it suggests to me being that he was killed spontaneously in a brawl or fight by one or both of the boys during the six hours that plaintiff was at work and not there, and that her only involvement was in trying to conceal what one or both of the boys had done.

---

1. As to the comments in the dissenting opinion regarding the issue submitted resulting in a nonunanimous verdict, the issue submitted was "Did . . . the plaintiff willfully and unlawfully kill Felbert Hilliard or procure his killing?" The common law rule that no one shall be permitted to acquire property as a result of his own crime would bar plaintiff from recovering under the policy whether she killed Hilliard or procured his killing. The result is thus the same regardless of whether some jurors subscribed to the killing theory and others to the procuring theory, and plaintiff could not have been prejudiced by any disagreement among the jurors in this regard.

Furthermore, the either/or "Mother Hubbard" type issue submitted to the jury was ambiguous on its face and did not result in the unanimous verdict that our law requires. For all we know some jurors found that she killed him, others found that she had him killed, and twelve jurors would have never agreed to either theory.

My vote is to vacate the judgment and remand with instructions to enter verdict and judgment for the plaintiff.