BRENDA W. WALKER, STANLEY G. LABORDE AND LAWRENCE J. VERNY, PLAINTIFFS v. MACEO K. SLOAN, JUSTIN F. BECKETT, PETER J. ANDERSON, MORRIS GOODWIN, JR., SLOAN FINANCIAL GROUP, INC., NCM CAPITAL MANAGEMENT GROUP, INC., NEW AFRICA ADVISERS, INC., AND AMERICAN EXPRESS FINANCIAL ADVISORS, INC., DEFENDANTS

No. COA98-1541

(Filed 18 April 2000)

### 1. Appeal and Error— appealability—related issues of fact

Plaintiffs' appeals from dismissal orders were interlocutory but were properly before the Court of Appeals as affecting a substantial right which might be lost without immediate review where all of plaintiffs' claims involved related issues of fact and delaying the appeal would create the possibility of inconsistent verdicts from different juries on the same factual issues.

### 2. Wrongful Interference— sufficiency of allegations—damages

The trial court did not err by granting a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) on a claim for tortious interference with prospective economic advantage where plaintiffs stated that defendants' actions resulted in actual damage to plaintiffs but the precise damages were unclear.

### 3. Unfair Trade Practices— employee buyout of business— bad-faith business dealing—ratification

The trial court erred by granting a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) on an unfair trade practices claim against some of the defendants arising from a failed employee buyout of a business where the allegations of misconduct against two of the owners point to the kind of bad faith business dealing which could constitute an unfair trade practice within the meaning of N.C.G.S. § 75-1.1, and the allegations against the board of the business were sufficient to show an implied ratification of the wrongful actions of the owners.

### 4. Unfair Trade Practices— insufficiency of allegations

The trial court correctly granted a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) against the American Express defendants of an unfair trade practice claim arising from a failed employee buyout of a business where the complaint completely lacked any allegations that any of the American Express defendants committed an act or engaged in a practice that could be characterized as

**WALKER v. SLOAN**

[137 N.C. App. 387 (2000)]

unfair under N.C.G.S. § 75-1.1 and did not allege sufficient facts to show that the American Express defendants were deceptive in their dealings with the employee group.

### 5. Fraud— constructive—sufficiency of allegations

The trial court correctly granted a dismissal under N.C.G.S. § 1A-1, Rule 12(b)(6) of claims for constructive fraud in an action arising from a failed employee buyout of a business where the complaint did not allege that defendants sought to benefit themselves through their conduct.

### 6. Pleadings— amendment—denied

The trial court did not abuse its discretion by denying leave to amend a complaint where plaintiffs moved to amend on 14 May after the complaint was filed on 23 December and the answer on 18 February, with nothing in the record indicating the reason for the delay. Moreover, the proposed amendment would still have failed to state a claim for constructive fraud.

Appeal by plaintiffs from orders entered 10 June 1998, 17 July 1998 and 17 August 1998 by Judge Henry V. Barnette, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 20 September 1999.

*Smith Helms Mullis & Moore, L.L.P., by J. Anthony Penry, and Fontana & Lanier, P.A., by Lynn Fontana, for plaintiffs-appellants.*

*Moore & Van Allen, PLLC, by Lewis A. Cheek and Andrew B. Cohen, for defendants-appellees Maceo K. Sloan, Justin F. Beckett, Sloan Financial Group, Inc., NCM Capital Management Group, Inc., and New Africa Advisers, Inc.*

*R. Jonathan Charleston for defendants-appellees Peter J. Anderson, Morris Goodwin, Jr., and American Express Financial Advisors, Inc.*

TIMMONS-GOODSON, Judge.

Brenda W. Walker ("Walker"), Stanley G. Laborde ("Laborde"), and Lawrence J. Verny ("Verny") (collectively, "plaintiffs") instituted an action on 23 December 1998 against Maceo K. Sloan ("Sloan"), Justin F. Beckett ("Beckett"), Sloan Financial Group, Inc. ("SFG" or "SFG/NCM"), NCM Capital Management Group, Inc. ("NCM" or

"SFG/NCM"), New Africa Advisers, Inc. ("New Africa"), Peter J. Anderson ("Anderson"), Morris Goodwin, Jr. ("Goodwin"), and American Express Financial Advisors, Inc. ("American Express") alleging claims for: (i) tortious interference with prospective economic advantage, (ii) unfair and deceptive trade practices, (iii) constructive fraud, (iv) fraud, (v) breach of contract, (vi) breach of fiduciary duty, and (vii) violation of the North Carolina Wage and Hour Act. On 18 February 1998, Sloan, Beckett, SFG, NCM, and New Africa (collectively, "the Sloan defendants") filed an answer and motion to dismiss plaintiffs' claims for tortious interference with prospective economic advantage, unfair and deceptive trade practices, constructive fraud, and breach of fiduciary duty under Rule 12(b)(6) of the Rules of Civil Procedure. Additionally, Anderson, Goodwin, and American Express (collectively, "the American Express defendants") moved to dismiss the claims brought against them—unfair and deceptive trade practices, constructive fraud, and breach of fiduciary duty—pursuant to Rule 12(b)(6). On 14 May 1998, the trial court heard arguments on the motions, and during the course of the hearing, plaintiffs moved for leave to amend their complaint. The court allowed plaintiffs leave to amend the claims for unfair and deceptive trade practices and breach of fiduciary duty. However, by order dated 10 June 1998, the trial court, in accordance with Rule 12(b)(6), dismissed plaintiffs' claims for tortious interference with prospective economic advantage and constructive fraud, as well as all claims asserted against New Africa.

Plaintiffs filed an amended complaint on 3 June 1998. On 16 June 1998, the Sloan defendants filed a "Renewed Partial Motion to Dismiss" plaintiffs' claims for unfair and deceptive trade practices and breach of fiduciary duty. The American Express defendants likewise moved to dismiss all claims pertaining to them. The Sloan defendants and the American Express defendants also moved to strike portions of plaintiffs' amended complaint, i.e., new allegations concerning those claims that the court had previously dismissed. In an order dated 17 July 1998, the trial court struck paragraphs 60, 65, 87 and 93 of the amended complaint and all references to those paragraphs. Then, on 17 August 1998, the trial court entered an order dismissing plaintiffs' claims for unfair and deceptive trade practices and breach of fiduciary duty. Plaintiffs filed timely notices of appeal from the 10 June, 17 July, and 17 August 1998 orders. On 6 November 1998, the trial court found that the three orders affected a substantial right, and in the alternative, certified them as final judgments pursuant to Rule 54(b) of the Rules of Civil Procedure.

WALKER v. SLOAN

[137 N.C. App. 387 (2000)]

The amended complaint alleges that plaintiffs are senior-level offices of NCM, a registered investment advisory firm that provides investment supervisory services to its clients in exchange for a percentage of the assets under management. In 1991, Sloan, Beckett, and American Express formed SFG, a minority-owned holding company incorporated under the laws of North Carolina for the purpose of acquiring NCM from North Carolina Mutual Life Insurance Company. American Express invested approximately $7,000,000 to fund the acquisition, 60% of which consisted of personal loans to Sloan and Beckett. In connection with the capitalization of SFG/NCM, American Express purchased 40% of the stock. Sloan and Beckett purchased 43% and 17% of the stock, respectively, and both pledged their shares as collateral for the loans from American Express.

American Express elected two representatives, Anderson and Goodwin, to serve on the Board of Directors ("the Board") with Sloan and Beckett. The corporation's bylaws provided that Sloan was to maintain managing control of the company and that American Express would maintain minority voting status on the Board. However, in the event that Sloan failed to pay dividends to American Express for three years, the latter would assume voting control, but not managing control, of SFG/NCM.

In December of 1996, Anderson and Goodwin met with Rodney B. Hare, NCM's Senior Vice President of Marketing and Client Services for the Midwest Region, to discuss their concerns regarding Sloan's management of NCM. During the meeting, Hare inquired as to whether American Express would be willing to sell its share of SFG/NCM to a group of key employees. Goodwin and Anderson responded affirmatively and quoted an expected sale price for the entire company, stating that they could "persuade" Sloan to sell his interest.

On 8 and 9 January 1997, American Express conducted an extensive review of SFG/NCM, which uncovered a series of irregular investment practices that could potentially subject the company to liability. Following the review, Goodwin approached Hare and said that if an employee group was still interested in buying SFG/NCM, "we are very interested in talking to you about that." Relying on the representations of Goodwin and Anderson, a group ("the employee group") consisting of plaintiffs and five other senior-level executives of NCM was formed with the objective of procuring an equity partner to join in the buyout of SFG/NCM. On 10 March 1997, the employee

WALKER v. SLOAN

[137 N.C. App. 387 (2000)]

group met with Sloan and presented him with a formal letter of interest regarding the purchase of SFG/NCM. The employee group sent similar letters to the remaining SFG/NCM Board members.

In anticipation of the purchase, the employee group began negotiations with two potential funding sources—the Edgar Lomax Company ("Lomax") in Springfield, Virginia, and Loomis Sayles & Company ("Loomis") in Bloomfield, Michigan. Representatives of both companies met with the SFG/NCM Board during a 21 March 1997 meeting. The Board expressed its interest in selling the company to the employee group and requested that Randall Eley of Lomax complete a standard form regarding the proposed deal, which was to be forwarded to Eley within 24 hours of the meeting. Goodwin and Anderson also prepared a letter for Sloan to send to Lomax. Sloan delayed in sending the materials, and when Lomax finally received the documents, their contents were different from what Goodwin and Anderson had drafted. Furthermore, without prior approval of the Board, Sloan communicated to Eley that he would only consider a cash deal, rather than the industry-standard installment sale.

Following the 21 March 1997 meeting, Sloan and Beckett terminated several members of the employee group, i.e., Walker, Hare, Verny, and McCaskill. Despite protests from the group, the SFG/NCM Board took no action to intervene and stop the terminations. The instability brought about by the firings impaired the employee group's negotiations with the funding sources, and as a result, they withdrew their offers to finance the purchase.

---

[1] Initially, we note that the dismissal orders from which plaintiffs appeal are interlocutory, as they do not dispose of all claims between all parties. *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E.2d 309 (1999) (order is interlocutory if it does not dispose of entire controversy between the parties). Ordinarily, interlocutory orders are not immediately appealable. *Id.* Direct appeal may be had from an interlocutory order, however, if deferring the appeal will injure a substantial right of one or more parties. *Abe v. Westview Capital*, 130 N.C. App. 332, 502 S.E.2d 879 (1998).

The original and amended complaints demonstrate that plaintiffs' many claims against defendants involve related issues of fact. This Court has held that although the right to avoid multiple trials is not, itself, a substantial one, the right to prevent separate trials of the same factual issues is, indeed, a substantial right. *Davidson v. Knauff*

*Ins. Agency*, 93 N.C. App. 20, 376 S.E.2d 488 (1989). The following rationale applies:

> [W]hen common fact issues overlap the claim appealed and any remaining claims, delaying the appeal until all claims have been adjudicated creates the possibility the appellant will undergo a second trial of the same fact issues if the appeal is eventually successful. This possibility in turn "creat[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."

*Id.* at 25, 376 S.E.2d at 491 (second alteration in original) (quoting *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982)). Accordingly, we conclude that the present orders of dismissal are properly before us, because they affect a substantial right of plaintiffs which might be lost if we deny immediate review. That said, we move now to our analysis of plaintiffs' assignments of error.

**[2]** Plaintiffs first assign as error the order dismissing their cause of action against the Sloan defendants for tortious interference with prospective economic advantage. Plaintiffs contend that the averments made in their original complaint concerning Sloan's and Beckett's conduct with regard to the employee group's efforts to secure financing from Lomax or Loomis were sufficient to state such a claim. We cannot agree.

A motion to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted challenges the legal sufficiency of the pleading. *Kane Plaza Associates v. Chadwick*, 126 N.C. App. 661, 486 S.E.2d 465 (1997). Dismissal is warranted "(1) when the face of the complaint reveals that no law supports plaintiff[s'] claim; (2) when the face of the complaint reveals that some fact essential to plaintiff[s'] claim is missing; or (3) when some fact disclosed in the complaint defeats plaintiff[s'] claim." *Peterkin v. Columbus County Bd. of Educ.*, 126 N.C. App. 826, 828, 486 S.E.2d 733, 735 (1997) (emphasis omitted). In ruling on a Rule 12(b)(6) motion to dismiss, the trial court regards all factual allegations of the complaint as true. *Kane Plaza*, 126 N.C. App. at 664, 486 S.E.2d at 467. Legal conclusions, however, are not entitled to a presumption of truth. *Peterkin*, 126 N.C. App. at 828, 486 S.E.2d at 735.

An action for tortious interference with prospective economic advantage is based on conduct by the defendants which prevents the

plaintiffs from entering into a contract with a third party. *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992). In *Coleman v. Whisnant*, 225 N.C. 494, 35 S.E.2d 647 (1945), our Supreme Court stated the following:

> We think the general rule prevails that unlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of the defendant[s'] own rights, but with design to injure the plaintiff[s], or gaining some advantage at [their] expense. . . . In *Kamm v. Flink*, 113 N.J.L., 582, 99 A.L.R., 1, it was said: "Maliciously inducing a person not to enter into a contract with another, which he would otherwise have entered into, is actionable if damage results." The word "malicious" used in referring to malicious interference with formation of a contract does not import ill will, but refers to an interference with design of injury to plaintiff[s] or gaining some advantage at [their] expense.

225 N.C. at 506, 35 S.E.2d at 656. Thus, to state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in "inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917, *disc. review denied and appeal dismissed*, 307 N.C. 127, 297 S.E.2d 399 (1982).

With respect to their claim for tortious interference with prospective economic advantage, plaintiffs' original complaint alleges the following:

> 54. A valid business relationship existed between plaintiffs, as members of the employee group, and Edgar Lomax and Loomis Sayles.

> 55. Plaintiffs reasonably expected that they, as members of the employee group, would contract with either Edgar Lomax or Loomis Sayles regarding the purchase of Sloan Financial and/or NCM.

> 56. Defendants knew of the relationship between plaintiffs and Edgar Lomax and Loomis Sayles and induced Edgar Lomax and Loomis Sayles not to contract with plaintiffs.

57. In so doing, defendants acted without justification, not in the legitimate exercise of defendants' own rights, but with design to injure the plaintiffs or to obtain some advantage at their expense.

58. Defendants [sic] actions resulted in actual damage to the plaintiffs.

The complaint further alleges that Sloan delayed in sending necessary information to Lomax and informed the lender that he would only consider a cash deal, rather than an industry-standard installment sale. Plaintiffs aver that these behaviors were motivated by Sloan's desire to cause Lomax to withdraw as a potential funding source for the employee group. Additionally, the complaint alleges that Sloan and Beckett terminated several key members of the employee group, causing Lomax to cease negotiations with the group regarding financing. The complaint also relevantly states the following:

The motives of Defendants Sloan and Beckett in interfering with plaintiff's [sic] prospective contractual relations with Edgar Lomax and Loomis Sayles were not reasonably related to the protection of a legitimate business interest of Sloan Financial but were for their own personal benefit, including but not limited to preventing further disclosures of their own malfeasance and mismanagement of NCM and Sloan Financial and preventing the repayment of their personal loan to American Express, and were motivated by personal ill will, spite and a desire to retaliate against the employee group for forming an alliance to purchase the company, and for responding to requests for information from the American Express Board members regarding Sloan's and Beckett's mismanagement of Sloan Financial and NCM.

Plaintiffs contend that in stating their claim for wrongful interference with a prospective economic advantage, they were not required to allege that a contract with Lomax or Loomis would have ensued "but for" defendants' actions. Assuming *arguendo* that a "but for" allegation was not necessary, plaintiffs were, nonetheless, required to assert some measurable damages resulting from defendants' allegedly tortious activities, i.e., what "economic advantage" was lost to plaintiffs as a consequence of defendants' conduct. Regarding damages, the complaint states only that "Defendants [sic] actions resulted in actual damage to the plaintiffs." It is unclear from this averment precisely what damages plaintiffs contend they have suffered. Our Supreme Court has stated that "[a] defendant is entitled to know from the complaint the character of the injury for which he

WALKER v. SLOAN

[137 N.C. App. 387 (2000)]

must answer." *Thacker v. Ward,* 263 N.C. 594, 599, 140 S.E.2d 23, 28 (1965). Because plaintiffs have failed to sufficiently plead damages, we conclude that the trial court properly dismissed their claim for tortious interference with prospective economic advantage pursuant to Rule 12(b)(6).

**[3]** With their next assignment of error, plaintiffs argue that the trial court erred in dismissing their claim for unfair and deceptive trade practices against the Sloan defendants. After careful examination of plaintiffs' amended complaint, we are constrained to agree.

Under section 75-1.1 of the General Statutes, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (1999). The statute defines "commerce" as "all business activities, however denominated." N.C.G.S. § 75-1.1(b). To state a claim for unfair and/or deceptive trade practices, the plaintiffs must allege that (1) the defendants committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiffs or to the plaintiffs' business. *Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C. App. 650, 464 S.E.2d 47 (1995). " 'A [trade] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Opsahl v. Pinehurst Inc.,* 81 N.C. App. 56, 69, 344 S.E.2d 68, 76 (1986) (quoting *Johnson v. Insurance Co.,* 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980)), *disc. review dismissed as improvidently allowed,* 319 N.C. 222, 353 S.E.2d 400 (1987). Furthermore, " '[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.' " *Opsahl,* 81 N.C App. at 69, 344 S.E.2d at 76 (alteration in original) (quoting *Johnson,* 300 N.C. App at 264, 266 S.E.2d at 622). The question of whether a particular practice is unfair or deceptive is a legal one reserved for the court. *Martin Marietta Corp. v. Wake Stone Corp.,* 111 N.C. App. 269, 282-83, 432 S.E.2d 428, 436 (1993), *aff'd per curiam,* 339 N.C. 602, 453 S.E.2d 146 (1995).

Plaintiffs' amended complaint alleges that the Sloan defendants violated the Unfair Trade Practices Act by engaging in the following "unfair, unethical, unscrupulous, immoral, and oppressive" activities:

> 67. a. On March 10, 1997 Sloan attempted to break up the employee group immediately upon learning of its formation

by attempting to bribe the portfolio managers into withdrawing from the group by promising them they would be "taken care of" later financially if they disassociated themselves from the group. Sloan's intent was to keep the employee group from buying Sloan Financial. Sloan's conduct was immoral, illegal, and unscrupulous.

b. When Sloan's overt effort to break up the employee group failed, he turned to other methods designed to keep the employee group from buying Sloan Financial, including refusing to participate in good faith in due diligence; refusing to send the letter drafted by Goodwin and Anderson to Edgar Lomax as instructed; telling Randall Eley of Edgar Lomax that he would only consider a "cash deal" for the purchase of the entire company when he had absolutely no right or authority to set the terms of the deal; and finally, terminating the plaintiffs. Sloan's conduct was immoral and oppressive and constitutes an inequitable assertion of his power or position.

The complaint further alleges that Sloan's acts "were in or affecting commerce" and that they "proximately caused injury to the plaintiffs, consisting of lost profits, lost wages and other benefits and income, and expenses including attorneys fees." Plaintiffs also aver that "[SFG], NCM, and New Africa are liable for the acts of Sloan under respondeat superior or agency principles." We note, in addition, that plaintiffs specifically incorporate prior allegations that Beckett acted with Sloan and pursuant to the same improper motive in terminating members of the employee group.

The allegations of Sloan's (and Beckett's) misconduct, on their face, point to the kind of bad faith business dealing which, if proved, could constitute an unfair trade practice within the meaning of section 75.1-1 of the General Statutes. Thus, plaintiffs have successfully stated a claim for unfair trade practices against Sloan and Beckett. The complaint also sufficiently alleges an unfair trade practice claim against SFG and NCM on the basis of respondeat superior.

A principal will be liable for the wrongful acts of its agent if the plaintiffs demonstrate the following:

the agent's act [was] (1) expressly authorized by the principal; (2) committed within the scope of the agent's employment and in furtherance of the principal's business—when the act comes within his implied authority; or (3) ratified by the principal.

WALKER v. SLOAN

[137 N.C. App. 387 (2000)]

*B.B. Walker Co. v. Burns International Security Services*, 108 N.C. App. 562, 565, 424 S.E.2d 172, 174 (1993). Ratification is " 'the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.' " *In re Espinosa v. Martin*, 135 N.C. App. 305, 308, 520 S.E.2d 108, 111 (1999) (quoting *American Travel Corp. v. Central Carolina Bank*, 57 N.C. App. 437, 442, 291 S.E.2d 892, 895, *disc. review denied*, 306 N.C. 555, 294 S.E.2d 369 (1982) (citation omitted)), *cert. denied*, 351 N.C. 353, —— S.E.2d —— (2000). To establish ratification, the plaintiffs must show that the principal " 'had knowledge of all material facts and circumstances relative to the wrongful act, and that the [principal], by words or conduct, show[ed] an intention to ratify the act.' " *Phelps v. Vassey*, 113 N.C. App. 132, 136, 437 S.E.2d 692, 695 (1993) (second alteration in original) (quoting *Brown v. Burlington Indus., Inc.*, 93 N.C. App. 431, 437, 378 S.E.2d 232, 236 (1989). Ratification " 'may be express or implied, and intent may be inferred from failure to repudiate an unauthorized act[.]' " *Espinosa*, 135 N.C. App. at 309, 520 S.E.2d at 111 (quoting *American Travel*, 57 N.C. App. at 442, 291 S.E.2d at 895) (citation omitted).

Plaintiffs' cause of action against the Sloan defendants for unfair trade practices incorporates, by reference, the following allegations, in pertinent part:

43. Upon information and belief, Board members Anderson and Goodwin knew that Sloan was delaying in sending the financial records, the form, and letter to Randall Eley but failed to intervene to ensure that Sloan acted in the best interests of Sloan Financial. . . .

. . . .

46. Shortly after the April 1 terminations [of Walker and Hare], the employee group asked the Sloan Financial Board to intervene to stop the terminations because they were adversely affecting the stability and value of the company and were interfering with the group's ability to negotiate the purchase of the company.

47. The Board failed to intervene to stop the terminations. The Board also failed to take any action to ensure that Sloan cooperated as directed in due diligence, such as by providing information and assurances as requested to Edgar Lomax.

**WALKER v. SLOAN**

[137 N.C. App. 387 (2000)]

48. On or about May 1, 1997 Sloan and Beckett terminated Lawrence Verny and Dennis McCaskill, Jr. Sloan's and Beckett's intent in terminating Verny and McCaskill was to break up the group and stop the group from contracting with Loomis Sayles or Edgar Lomax. Again, the Board failed to intervene to stop the terminations.

These allegations, taken as true, are sufficient to show that the SFG/NCM Board impliedly ratified the allegedly wrongful actions of Sloan and Beckett. Accordingly, we hold that plaintiffs' claim for unfair and deceptive trade practices against Sloan, Beckett, SFG, and NCM were adequately plead so as to withstand a challenge under Rule 12(b)(6). The claim against New Africa for unfair trade practices was properly dismissed, as the complaint is devoid of any factual allegations to support such a claim.

[4] Plaintiffs contend that they also stated a cause of action against the American Express defendants under section 75-1.1 of the General Statutes. We must disagree.

Regarding the American Express defendants, plaintiffs' amended complaint states as follows:

72. . . . the actions described below had the tendency or capacity to deceive the public and plaintiffs and actually deceived plaintiffs, or were unfair to the plaintiffs.

a. Goodwin and Anderson deceived the plaintiffs into believing that American Express had control of Sloan Financial and Sloan's and Beckett's shares and that American Express would take all steps necessary to effectuate the sale of Sloan Financial to the plaintiffs.

b. American Express misrepresented to plaintiffs its intent to sell to the plaintiffs.

c. Goodwin and Anderson actively encouraged the plaintiffs to form a group to buy Sloan Financial yet failed to disclose to plaintiffs the results of the review of January 8-9, 1997 as set forth in paragraph 30.

d. Goodwin's and Anderson's deceptive misrepresentations and omissions caused plaintiffs to incur in excess of $20,000 in attorneys' fees, costs and other expenses related to the formation of the group.

e. Goodwin's and Anderson's actions were unfair and unethical in that after inducing the plaintiffs' group to form and expend a considerable amount of time and money in their efforts to negotiate with the two funding sources, Goodwin and Anderson stood by and did nothing while Sloan intentionally refused to participate in due diligence, then gutted the firm by terminating the plaintiffs.

In paragraph 30 of the complaint, plaintiffs contend that the review uncovered a multitude of investment activities by NCM which subjected the company to liability for self-dealing and "rais[ed] significant regulatory and liability issues." The complaint further alleges that the actions of Goodwin and Anderson "were in or affecting commerce" and that such actions "proximately caused actual injury to the plaintiffs." Plaintiffs also aver that American Express is liable for the actions of Goodwin and Anderson in that such actions "were taken in the course and scope of their employment with American Express or in furtherance of American Express's business."

As previously stated, an act is "unfair" within the meaning of section 75-1.1 if the act " 'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Jones v. Capitol Broadcasting Co.*, 128 N.C. App. 271, 276, 495 S.E.2d 172, 175 (1998) (quoting *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)). A practice is deemed to be deceptive if it " 'possess[es] the tendency or capacity to mislead, or creat[es] the likelihood of deception.' " *Forsyth Memorial Hospital v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992) (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 279 S.E.2d 1 (1981)). Recovery will not be had, however, where the complaint fails to demonstrate that the act of deception proximately resulted in some adverse impact or actual injury to the plaintiffs. *Miller v. Ensley*, 88 N.C. App. 686, 365 S.E.2d 11 (1988).

At the outset, we note that plaintiffs' complaint completely lacks any allegations suggesting that any of the American Express defendants committed an act or engaged in a practice that could be characterized as "unfair" under section 75-1.1. Similarly, we hold that plaintiffs' complaint does not allege sufficient facts to show that the American Express defendants were deceptive in their dealings with the employee group. The statements or representations of which plaintiffs complain are set out as follows:

24. . . . Goodwin and Anderson indicated that American Express would be very interested in selling to an employee group, and stated that since Sloan and Beckett had not paid interest in three years thereby not complying with the agreement between Sloan, Beckett, and American Express, and in fact were in default under that agreement, that the price at which American Express would sell the entire company was ten to eleven million dollars. Goodwin and Anderson also indicated that if necessary they could "persuade" Sloan to sell his interest.

. . . .

30. . . . Goodwin further stated to Hare that if the employee group was interested in buying "we are very interested in talking to you about that." Goodwin assured Hare that American Express would do what was necessary to make the transaction happen. . . .

We have said that dismissal under Rule 12(b)(6) is appropriate if "the face of the complaint reveals that some fact essential to plaintiff[s'] claim is missing" or if "some fact disclosed in the complaint defeats plaintiff[s'] claim." *Peterkin,* 126 N.C. App. at 828, 486 S.E.2d at 735 (emphasis omitted). Plaintiffs allege, as one basis for their claim of deceptive trade practices, that the American Express defendants failed to disclose the results of the 8 and 9 January review, i.e., that SFG/NCM had engaged in various investment practices that subjected the company to potential liability. This fact, even if taken as true, is not a sufficient basis for plaintiffs' claim, because their purchase of SFG/NCM was not achieved, and they cannot show any actual injury resulting from the alleged omission.

Additionally, plaintiffs complain that they relied to their detriment on Goodwin's and Anderson's allegedly fraudulent representations (1) that American Express had control of SFG/NCM, (2) that American Express wanted to sell the company to the employee group, and (3) that American Express would take all necessary steps to effectuate the sale. The pleading, however, contains allegations which would indicate that Goodwin's and Anderson's statements were neither false nor misleading. For instance, plaintiffs allege the following facts:

27. . . . On or about January 1, 1997 American Express took control of Sloan Financial and NCM and . . . because Sloan and Beckett had defaulted on their personal loans from American Express for three years, American Express as of January 1, 1997

had actual or de facto control of Sloan's and Beckett's shares of Sloan Financial and NCM.

. . . .

39. . . . Upon information and belief, Goodwin and Anderson instructed Sloan and Beckett to cooperate regarding due diligence and all other steps necessary to effectuate the sell. . . .

. . . .

51. Upon information and belief, at no time relevant to this Complaint did American Express decide that it no longer wanted to sell Sloan Financial to the plaintiffs, and, in fact, American Express has continued to try to sell Sloan Financial to other entities after the two funding sources pulled out of negotiations with the plaintiffs.

These averments necessarily defeat plaintiffs' claim that the American Express defendants violated the prohibition against unfair and deceptive trade practices. Therefore, the trial court was correct in dismissing this claim under Rule 12(b)(6).

**[5]** Plaintiffs' next assignment of error is that the trial court improvidently dismissed their claims against the Sloan and American Express defendants for constructive fraud. Our review of plaintiffs' original complaint, however, compels us to disagree.

To state a cause of action for constructive fraud, "plaintiff[s] must allege facts and circumstances which created the relation of trust and confidence and 'which led up to and surrounded the consummation of the transaction in which defendant[s] [are] alleged to have taken advantage of [their] position of trust to the hurt of plaintiff[s].' " *Ridenhour v. IBM Corp.*, 132 N.C. App. 563, 566, 512 S.E.2d 774, 777 (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (citation omitted)), *disc. review denied*, 350 N.C. 595, 537 S.E.2d 481 (1999). Moreover, "an essential element of constructive fraud is that 'defendants sought to benefit themselves' in the transaction." *State ex rel. Long v. Petree Stockton, L.L.P.*, 129 N.C. App. 432, 445, 499 S.E.2d 790, 798 (1998) (quoting *Barger*, 346 N.C. at 667, 488 S.E.2d at 224), *cert. dismissed as improvidently granted*, 350 N.C. 57, 510 S.E.2d 374 (1999).

In essence, plaintiffs' action for constructive fraud against the Sloan and American Express defendants states that "[a] relationship

of trust and confidence existed between the plaintiffs and defendants" and that "[t]he defendants failed to act in good faith with respect to the transaction between the parties, to the hurt of the plaintiffs." The complaint does not, however, allege that the Sloan or American Express defendants sought to benefit themselves through their conduct. Accordingly, plaintiffs' claim for constructive fraud must fail.

[6] Plaintiffs further contend that the trial court erred by dismissing all claims in their original complaint against New Africa. However, after thoroughly examining the pleading, we are satisfied that the court did not err, in that the complaint fails to allege any cause of action against New Africa. As to plaintiffs' final contention that the court should have permitted them leave to amend their claims for tortious interference with prospective economic advantage and constructive fraud, we find no abuse of discretion.

Once an answer has been served, plaintiffs must seek leave of court to amend their complaint, and "leave shall be freely given when justice so requires." N.C.R. Civ. P. 15(a). A motion to amend, however, is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent proof that the judge manifestly abused that discretion. *Smith v. McRary*, 306 N.C. 664, 295 S.E.2d 444 (1982). Where the court's reason for denying leave to amend is not stated in the record, " 'this Court may examine any apparent reasons for such denial.' " *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d 632, 634 (1985) (quoting *United Leasing Corp. v. Miller*, 60 N.C. App. 40, 42-43, 298 S.E.2d 409, 411 (1982), *pet. disc. review denied*, 308 N.C. 194, 302 S.E.2d 248 (1983)). Reasons warranting a denial of leave to amend include "(a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Id.*

Here, plaintiffs orally moved to amend their complaint during the 14 May 1998 hearing on the motions to dismiss made by the Sloan and American Express defendants. Plaintiffs' original complaint was filed 23 December 1997, and the Sloan defendants filed their answer on 18 February 1998. Nothing in the record before us explains plaintiffs' delay in seeking to amend their complaint. Plaintiffs, therefore, have not met their burden of showing an abuse of the court's discretion. *See Caldwell's Well Drilling, Inc. v. Moore*, 79 N.C. App. 730, 340 S.E.2d 518 (1986) (affirming denial of leave to amend where record does not indicate why plaintiff waited three months from filing of answer before moved to amend complaint). Furthermore, we have

reviewed the proposed amendment and conclude that it still fails to state a claim for constructive fraud against any defendant. Thus, we uphold the court's order denying plaintiffs' motion to amend.

In sum, we affirm dismissal of the following claims: (1) tortious interference with prospective economic advantage against the Sloan defendants; (2) unfair and deceptive trade practices against the American Express defendants; (3) constructive fraud against the Sloan and American Express defendants; and (4) all claims against New Africa. We, however, reverse the dismissal of plaintiffs' claim for unfair and deceptive trade practices against the Sloan defendants (excluding New Africa), and remand this cause for further appropriate proceedings.

Affirmed in part, reversed in part, and remanded.

Chief Judge EAGLES and Judge MARTIN concur.