NORTH CAROLINA                          IN THE GENERAL COURT OF JUSTICE
GUILFORD COUNTY                            SUPERIOR COURT DIVISION
                                                  00 CvS 5440

POLO RALPH LAUREN
CORPORATION,                          )
                                      )
Plaintiff,                            )              ORDER and OPINION
                                      )
  v.                                  )
                                      )
GULF INSURANCE COMPANY,               )
                                      )
Defendant.                            )
                                      )

{1}        THIS MATTER is before the Court on Defendant Gulf Insurance Company's ("Gulf")
motions to compel arbitration, stay proceedings and grant preliminary injunction, as well as Plaintiff Polo
Ralph Lauren Corporation's ("Polo") motion to amend complaint. These motions are inextricably
intertwined because Polo's proposed amended complaint includes a cause of action to reform the contract
to eliminate the arbitration clause Gulf invoked. For the reasons stated below, the Court will permit the
amendment, schedule a short discovery period to determine the reformation issue and tentatively rule on
the motion to compel arbitration.

*Carruthers & Roth, P.A., by Joseph Finarelli and Arthur A. Vreeland; Anderson Kill & Olick,
P.C., by Eugene R. Anderson and Edward Stein, for plaintiff.*

*Adams Kleemeier Hagan Hannah & Fouts, by James W. Bryan and Daniel W. Fouts; Drinker
Biddle & Reath, LLP, by Alan J. Joaquin, for defendant.*

## I.

{2}        To date, this relatively straightforward breach of contract case has been more about
procedural maneuvers than resolution of the substantive issues. Polo claims to have suffered a $5 million
loss due to employee theft of merchandise; theft, it claims, is covered by a blanket crime insurance policy
issued by Gulf. That policy provides coverage for loss of money, securities or other property incurred as a
result of an employee's dishonest or fraudulent acts. Gulf does not deny coverage but disputes the amount
of the loss. At issue is (1) the nature and amount of the merchandise stolen, and (2) the method of valuing
that merchandise for purposes of the insurance policy. Polo's original complaint alleged that the policy
provides that the merchandise be valued at retail selling price. Gulf contends that the policy provides that
the merchandise be valued at replacement value. The pertinent clause is found in Section 9 of the policy
and reads:

> In case of damage to the [p]remises or loss of property other than Securities, [Gulf] shall not
> be liable for more than the actual cash value of such property, or for more than the actual cost
> of repairing such [p]remises or property or of replacing same with property or material of like
> quality and value. [Gulf] may, at its election, pay such actual cash value, or make such
> repairs or replacements. If [Gulf] and [Polo] cannot agree upon such cash value or such cost
> of repairs or replacements, such cash value or such cost shall be determined by arbitration.

{3}        Polo seeks to amend the complaint to add a second cause of action for reformation of the
above clause based upon mutual mistake. Polo contends that if the actual clause provides for replacement
value it does not reflect the actual agreement of the parties and that therefore there has been a mutual
mistake. Polo requests that the Court enter an order "reforming the Insurance Policy to include a selling
price valuation clause for finished goods as per the expiring Affiliated FM policy." (Pl.'s Mot. Amend

Compl. at 22). The Affiliated FM policy refers to a policy Polo had with another company prior to the effective date of the Gulf policy. Polo contends that this reformation, by expunging the current replacement value clause, will eliminate the only reference to arbitration in the entire insurance policy.

## II.

{4}      This is not the first procedural detour the parties have taken in this case. Gulf commenced a declaratory judgment action in New York State on March 10, 2000, by filing a summons with notice. On March 23, 2000, Polo filed this action in North Carolina and obtained service of process upon Gulf on March 24, 2000. On April 13, 2000, Gulf filed its complaint in the New York action and obtained service of process upon Polo on April 14, 2000. Thereafter, on June 1, 2000, Judge William H. Freeman determined that the North Carolina action was the prior pending action and enjoined Gulf from pursuing the New York action. In the complaint filed by Gulf in New York, Gulf did not seek arbitration. Gulf filed its answer and counterclaim in North Carolina on June 1, 2000, in which it asserted a twelfth affirmative defense demanding that the dispute be resolved by arbitration. The parties then consented to have this case transferred to the North Carolina Business Court.

{5}      Polo claims it was prejudiced by Gulf "serving and requiring a response to pleadings, including counter claims . . . . Gulf has served extensive interrogatories and document requests, in response to which to Polo has drafted responses and undertaken document reviews to respond to these demands." (Pl.'s Br. Opp'n Mot. Compel Arbitration at 12).

{6}      Gulf's motion to compel arbitration was filed on November 14, 2000. Thereafter, Polo filed its motion to amend the complaint on December 7, 2000. Both sides have served written discovery, but no responses have been filed pending resolution of the current motions.

## III.

{7}      Practicality requires that the Court turn first to the motion to amend even though it was filed after the motion to compel arbitration. Under Rule 15(a) of the North Carolina Rules of Civil Procedure, after a responsive pleading has been filed, a party may amend its prior pleading by leave of court, "and leave shall be freely given when justice so requires." It is well settled that motions to amend the pleadings should be granted unless there is a compelling reason not to do so. *See Mauney v. Morris* 316 N.C. 67, 340 S.E.2d 397 (1986). There are five potential reasons to deny such a motion: "(a) undue delay, (b) bad faith, (c) undue prejudice, (4) futility of amendment, and (5) repeated failure to cure defects by previous amendments." *Walker v. Sloan,* 137 N.C. App. 387, 402, 529 S.E.2d 236, 247 (2000). In this instance, Gulf cites two of these grounds for denying the motion.

{8}      Gulf first asserts that the motion to amend should not be considered because it was filed after the motion to compel arbitration, which should be considered a dispositive motion. Thus, the motion should be denied because of undue delay. After oral argument on the motions, counsel for Gulf, with commendable candor, brought to the Court's attention the case of *Smith v. Young Moving and Storage,* No. 98 Civ. 01214 (N.C. App. filed Dec. 29 2000), a slip opinion yet to be published. In the *Smith* case, the majority held that a motion to compel arbitration was not a dispositive motion. *Id.* at 5. The trial judge denied a motion to compel arbitration because it was filed after the deadline set by the court for filing dispositive motions. *Id.* at 2-4. The trial court ruled that the motion to compel was a dispositive motion as contemplated by the scheduling order and as such was filed too late. *Id.* The Court of Appeals reversed, holding that the motion to compel did not dispose of the whole case and was therefore not a dispositive motion that had to be filed before the scheduling order deadline. *Id.* at 5.[FN1] Under the holding in *Smith*, Gulf's motion to compel is not a dispositive motion, and hence the failure to plead the claim for reformation until after the motion to compel was filed is inconsequential. The *Smith* court held that the plaintiff had failed to show prejudice by the delay in filing the motion to compel arbitration. *Id.* at 6. There was no record of expense incurred by the plaintiff, and the alleged prejudice consisted of "the inconveniences and expenses consistent with normal trial preparation." *Id.*

{9}     Gulf next argues that the motion to amend should be denied because it is futile.  In support of that argument, Gulf submitted the affidavit of the broker for Polo at the time the policy was issued, who swore under oath that Gulf never agreed to issue a policy based upon selling price but always insisted upon replacement value.  Given this evidence, Gulf contends that Polo will never be able to establish mutual mistake to support reformation of the contract.  In fact, the allegations supporting the reformation claim are conclusory in nature, and the rebuttal affidavits submitted by Polo thus far fall short of establishing mutual mistake.  In addition, Polo may have a statute of limitations[FN2] problem in asserting its reformation claim, and there may be other defenses asserted in the amended answer.  However, those issues are best left to summary judgment, not a motion to amend.

{10}     Accordingly, the Court will grant the motion to amend.  In doing so, it is not the intent of the Court to let the amendment dictate the arbitration issue.  Polo may not defeat Gulf's right to arbitration simply by filing the motion to amend.  In order to preserve the position of the parties, the Court will set a sixty-day discovery period on the reformation issue and the issue of the meaning of the language in Section 9 of the policy.  Either during or at the end of that period, either party may file a motion for summary judgment on the reformation or contract interpretation issues.  If Polo fails to establish the right to proceed with the reformation claim, the Court will enter an order compelling arbitration on the basis set forth below.

## IV.

{11}     The *Smith* case was instructive on other issues.  Significantly, the court held:

> In our review, we are mindful that North Carolina has a strong public policy favoring resolution of disputes through arbitration.  *See Johnston County v. R.N. Rouse & Co.,* 331 N.C. 88, 414 S.E.2d 30 (1992).  "Any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Cyclone Roofing Co. v. LaFave Co.,* 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984).

*Id.* at 2-3.

{12}     Polo first asserts that the arbitration clause is unenforceably vague.  While the arbitration clause does not provide any details on the arbitrator or procedures for arbitration, these omissions are insufficient to strike the arbitration clause.  The Uniform Arbitration Act in sections 1-567.4 through 1-567.10 identifies procedures under which arbitration may occur.  For example, section 1-567.4 provides:

> If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators.

This express provision requiring the court, at the request of either party, to name an arbitrator when the parties' agreement has not named one contemplates an arbitration clause that does not specify an arbitrator.  Other sections provide the arbitrator guidelines for the arbitration process.  §§ 1-546.4-.10.  Accordingly, a clause failing to name an arbitrator or procedures for arbitration is not unenforceably vague.

{13}     Polo also argues that Gulf has, through delay, waived any right to arbitrate. At this point in the litigation the parties have submitted their pleadings and propounded some discovery upon one another.  As a general rule "the mere filing of a complaint or answer does not result in waiver of arbitration absent evidence showing prejudice to the adverse party."  *Servomation Corp. v. Hickory Constr. Co.,* 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986).

> A party may be prejudiced by his adversary's delay in seeking arbitration if (1) it is forced to

bear the expense of a long trial, (2) it loses helpful evidence, (3) it takes steps in litigation to its detriment or expends significant amounts of money on the litigation, or (4) its opponent makes use of judicial discovery procedures not available in arbitration.

*Id.* In *Smith*, the plaintiff claimed that evidence of expenses it incurred in answering defendant's interrogatories was sufficient to find that defendant waived its right to arbitration. *Smith v. Young Moving and Storage,* No. 98 Civ. 01214, slip op. at 6 (N.C. App. filed Dec. 29 2000). The *Smith* court held:

> The prejudice described by plaintiff in the case at bar consists, for the most part, of inconveniences and expenses consistent with normal trial preparation . . . .
>
> In any event, we are of the opinion that evidence of expenses related to defendant's interrogatories would have been irrelevant since plaintiff has failed to demonstrate that the judicial discovery procedures used by defendant, or their equivalent, would be unavailable in arbitration. Thus plaintiff might well have incurred the same expense during arbitration.

*Id.*, quoting *Servomation Corp. v. Hickory Constr. Co.,* 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986).

{14}      As in *Smith*, Polo's expenses are expenses consistent with normal trial preparation and therefore insufficient to find that Gulf waived its right to arbitration. Further, given the lack of details in the arbitration agreement, section 1-567.8 could apply. Section 1-567.8 states:

> Witnesses; subpoenas; depositions.
>
>      (a) The arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and shall have the power to administer oaths. Subpoenas so issued shall be served, and upon application to the court by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in a civil action.
>
>      (b) On application of a party and for use as evidence, the arbitrators may permit a deposition to be taken, in the manner and upon the terms designated by the arbitrators, of a witness who cannot be subpoenaed or is unable to attend the hearing.

Similar to *Smith,* the discovery expenses of which Polo complains are equivalent to those that may be incurred during arbitration.

{15}      Polo also complains that it has been prejudiced "through the expense and delay of combating both the New York action and Gulf's use of the litigation process here in North Carolina." (Pl.'s Br. Opp'n Def.'s Mot. Compel Arbitration at 9). In *Smith* the discovery period was closed and the arbitration argument was not introduced until after dispositive motions were due, and yet the court found no undue delay. *Smith v. Young Moving and Storage,* No. 98 Civ. 01214, slip op. at 6 (N.C. App. filed Dec. 29 2000). Unlike *Smith,* where the discovery period was closed before the motion for arbitration was filed, Gulf filed its motion well in advance of trial. Further, it is commonplace for plaintiffs and defendants to disagree on the appropriate forum in which to adjudicate a case, and moving a case to a different jurisdiction is a frequent pretrial maneuver. Hence, this Court finds that arguing over where the case is adjudicated is insufficient grounds for which to find waiver.

{16}      Polo argues that even if the arbitration clause applied to the contract, it only applies insofar as it applies to the method used to determine price per unit of merchandise sold. As stated above, the parties dispute both the amount of the merchandise stolen and the method of valuing that merchandise for purposes of the insurance policy. The clause in question states, "If [Gulf] and [Polo] cannot agree upon such cash value or such cost of repairs or replacements, such cash value or such cost shall be determined by arbitration." Polo claims that this language conveys that the volume of the merchandise allegedly stolen is not subject to the arbitration clause. According to Polo's theory, the clause only applies to the

cash value per unit of merchandise, and the volume of missing merchandise is a separate, non-arbitrable issue.  Given North Carolina's strong public policy in support of arbitration, this Court refuses to apply such a restrictive reading of the clause. "There is a strong public policy favoring the settlement of disputes by arbitration, and doubts concerning the scope of arbitrable issues will be resolved in favor of the party seeking arbitration." *Servomation Corp. v. Hickory Constr. Co.,* 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986).  The Court believes that the nature and volume of the merchandise are essential components in determining the cash value or replacement cost of the merchandise and therefore within the scope of the arbitration clause.

{17}     For the reasons stated above, the Court finds that Polo has failed to overcome North Carolina's strong policy favoring arbitration, and, therefore, it is hereby ordered, adjudged and decreed:

1.  Polo's motion to amend is granted followed by a sixty-day discovery period, dispositive motions and trial on the reformation issue;

2.  If Polo does not prevail on the reformation issue, the Court will grant Gulf's motion to compel arbitration, motion to stay proceedings, and motion for preliminary injunction.

This is the 31st day of January 2001.

Ben F. Tennille
Special Superior Court Judge
 for Complex Business Cases

---

[FN1] The dissent held that a motion to compel arbitration is a dispositive motion.  *Young Moving and Storage,* No. 98 Civ. 01214, slip op. at 8-10  (N.C. App.  filed Dec. 29 2000).

[FN2] There is a three year statute of limitations on a reformation claim, which "begins to run from the time the mistake has been discovered or should have been discovered in the exercise of due diligence." *Huss v. Huss,*  31 N.C. App. 463, 230 S.E.2d 159 (1976) quoting *Lee v. Rhodes,*  231 N.C. 602, 58 S.E.2d 363 (1950).