BUSINESS CABLING, INC., PLAINTIFF v. BARRY W. YOKELEY AND VITAFOAM INCORPORATED, DEFENDANTS

No. COA06-1255

(Filed 17 April 2007)

**Unfair Trade Practices— bids through former employee—no contract or conspiracy**

The evidence and the trial court's findings following a bench trial did not support the conclusion that defendant engaged in an unfair and deceptive trade practice in accepting bids for work through a former employee of plaintiff (there was no non-compete agreement). None of the court's extensive findings state how defendant "knowingly participated" with the former employee to

solicit defendant's business or to usurp a business opportunity, there is no evidence of a conspiracy, no evidence of detrimental reliance, and no contract. Defendant cannot be placed at risk for accepting one competitor's bid over another. The court's judgment was reversed.

Appeal by defendant Vitafoam Incorporated and cross appeal by plaintiff from judgment entered 22 June 2006 and order entered 26 June 2006 by Judge John O. Craig, III, in Guilford County Superior Court. Heard in the Court of Appeals 28 March 2007.

*Stephen E. Lawing, for plaintiff-appellee/cross appellant.*

*Wyatt Early Harris Wheeler LLP, by William E. Wheeler, for defendant-appellant/cross appellee.*

*Kennedy Covington Lobdell & Hickman, LLP, by William G. Scoggin, for Amicus Curae North Carolina Citizens for Business and Industry.*

TYSON, Judge.

Vitafoam, Incorporated ("defendant") appeals from judgment and order entered following a bench trial in which the court concluded defendant had engaged in unfair and deceptive practices ("UDP") with Business Cabling, Inc. ("plaintiff"). Plaintiff cross-appeals only the portion of the judgment allowing credit to defendant for any amount it recovers from Barry W. Yokeley ("Yokeley"). We reverse.

## I. Background

Plaintiff is a North Carolina corporation with its principal place of business located in Davidson County, North Carolina. Plaintiff installs industrial grade computer cables. In 2004, Bud and Shira Hedgepeth owned ninety percent of plaintiff's outstanding stock.

Yokeley was employed by plaintiff from 26 November 2001 to 6 February 2004. During this time, Yokeley was an officer and director of the corporation and owned ten percent of plaintiff's stock. Yokeley was plaintiff's sole representative in sales and marketing. His duties included: (1) soliciting new customers; (2) making business proposals to new and existing customers; (3) entering into contracts on plaintiff's behalf with customers; and (4) supervising, performing, and carrying out these contracts with plaintiff's customers. Yokeley's employment was not subject to any covenant not to compete or a non-solicitation agreement with plaintiff.

BUSINESS CABLING, INC. v. YOKELEY

[182 N.C. App. 657 (2007)]

Defendant is a North Carolina corporation with its principal place of business located in Guilford County, North Carolina. Defendant manufactures foam used in various applications.

Richard Loftin ("Loftin"), Yokeley's father-in-law, was defendant's chief operating officer until April 2004. In 2003, Loftin informed Yokeley that defendant was considering an update of its computer network and might require new computer cable of the type installed by plaintiff. Loftin was not involved in any contract negotiations between plaintiff and defendant.

Between May and July 2003, Yokeley submitted a bid on behalf of plaintiff for a small cable installation at defendant's High Point facility. Jim Bridges ("Bridges") was defendant's information technology director at that time and possessed authority to accept such small bids. Bridges accepted Yokeley's bid, the work was completed, and defendant paid plaintiff in full.

In July 2003, defendant was considering a major upgrade of its computer network at its locations in: (1) High Point; (2) Greensboro; (3) Thomasville, North Carolina; (4) Tupelo, Mississippi; and (5) Chattanooga, Tennessee. On 28 July 2003, plaintiff through Yokeley submitted bids to perform the cable installation at these locations.

Bridges informed Yokeley that no contract would exist between plaintiff and defendant until: (1) each separate agreement was approved by defendant's senior management; (2) a capital expense budget proposal was approved; (3) defendant was assigned a purchase order number; and (4) the purchase order number was given to plaintiff.

Between 19 September 2003 and 30 September 2003, Bridges accepted plaintiff's proposals on defendant's behalf for the High Point and Greensboro facilities. Plaintiff completed the work at both facilities, invoiced defendant, and was paid in full in December 2003.

In late 2003 or early 2004, defendant hired David Kame ("Kame") as its new chief financial officer. Kame was instructed to carefully review all proposed projects. Defendant's Thomasville and Chattanooga projects were placed on indefinite hold. The Tupelo project remained under consideration.

Defendant never accepted plaintiff's bids to install cable at defendant's Thomasville and Chattanooga locations. No contract

was entered into between plaintiff and defendant to perform any work at these locations. The Thomasville and Chattanooga projects were never performed by any vendor. Defendant ultimately sold these plants.

In late 2003, disputes arose between Bud and Shira Hedgepeth and Yokeley. In December 2003, Yokeley was asked to seek other employment. In January 2004, Yokeley began negotiations for employment with one of plaintiff's competitors, Fleet Communications ("Fleet"). During Yokeley's negotiations with Fleet, he presented a list of potential customers he felt he could bring to Fleet. This list included cable installations at several of defendant's facilities, including Tupelo. Yokeley resigned from plaintiff on 6 February 2004 and became employed by Fleet on 9 February 2004.

On 5 January 2004, Yokeley prepared a bid proposal in his own name for defendant's Tupelo project, prior to resigning from plaintiff. In mid-January 2004, Yokeley presented the bid to Bridges. On 18 February 2004, Bridges accepted Yokeley's bid for defendant's Tupelo project. Defendant's cable installation in Tupelo was performed by Yokeley's new employer, Fleet. Fleet invoiced defendant for the work and was paid in full.

After Yokeley became employed by Fleet on 9 February 2004, Fleet, through Yokeley, bid on and performed several other projects for defendant. None of these projects had been previously bid upon by plaintiff. Plaintiff presented no evidence it was even aware of these projects. Among the projects Fleet bid on was a new project at defendant's Greensboro location ("new Greensboro project"). The new Greensboro project was completely separate and apart from any work plaintiff had previously bid on. On 11 February 2004, defendant accepted Fleet's bid on the new Greensboro project. Fleet completed the work, submitted invoices, and was paid in full.

On 11 March 2004, Shira Hedgepeth contacted Bridges on plaintiff's behalf and inquired for updates on any of defendant's cable projects. Bridges responded he had no idea what the status of the projects were at that point and that until Bridges heard from defendant's chief executive officers, and Bud Hedgepeth heard from him, "all bets [were] off." On 12 March 2004, Bridges informed Shira Hedgepeth, "I think at this point you need to plan as though [defendant's acceptance of plaintiff's bids] is not going to happen, which is a real possibility."

BUSINESS CABLING, INC. v. YOKELEY

[182 N.C. App. 657 (2007)]

At the time this electronic mail correspondence occurred between Shira Hedgepeth and Bridges, Bridges was aware that defendant had contracted with Fleet through Yokeley to perform cable installation work at defendant's Tupelo and new Greensboro facilities. Bridges neither advised Shira Hedgepeth, nor any other person at plaintiff, that Fleet had performed the cable installation at defendant's Tupelo and new Greensboro locations. Bridges's employment with defendant was terminated on 31 March 2004.

On 15 September 2004, plaintiff filed suit against defendant and Yokeley. Plaintiff asserted claims against defendant for: (1) breach of contract; (2) breach of implied warranty of good faith and fair dealing; and (3) UDP. Plaintiff asserted claims against Yokeley for: (1) wrongful interference with contract; (2) UDP; and (3) punitive damages. Plaintiff's claims against defendant were tried separately from its claims against Yokeley.

On 22 June 2006, the trial court concluded defendant had participated in UDP and entered judgment against defendant. The trial court awarded plaintiff treble damages in the amount of $96,272.88, $95,000.00 in attorneys fees and various other costs. The trial court also ordered plaintiff to credit defendant for any amount it recovered from Yokeley. Plaintiff's claims against Yokeley were not tried and no judgment was entered against Yokeley. Defendant appeals and plaintiff cross-appeals.

## II. Issues

Defendant argues the trial court erred by: (1) concluding it engaged in UDP where the competent evidence presented and the facts found are insufficient to justify the conclusion; (2) finding and concluding it engaged in UDP with regard to its new Greensboro project where plaintiff neither alleged such claim in its complaint, nor amended its complaint to do so; (3) finding plaintiff would have obtained contracts with defendant to perform installations at defendant's Tupelo and new Greensboro projects or plaintiff could claim such potential installations were a prospective advantage or business opportunity; (4) finding plaintiff's profit margin on defendant's Tupelo and new Greensboro projects would have been 27.3% if plaintiff had obtained those contracts and/or finding plaintiff suffered actual damages resulting in lost profits of $32,090.96; (5) finding defendant unwarrantedly refused to fully resolve the underlying matter prior to plaintiff's action; (6) awarding plaintiff its legal fees; and (7) awarding plaintiff its court costs.

Plaintiff cross-appeals and argues the trial court erred by allowing defendant credit for any amount plaintiff recovers from Yokeley "whether by judgment, settlement, or otherwise."

## III.  Standard of Review

Upon an appeal from a judgment entered in a non-jury trial, our Supreme Court imposed "three requirements on the court sitting as finder of fact: it must (1) find the facts on all issues joined in the pleadings; (2) declare the conclusions of law arising from the facts found; and (3) enter judgment accordingly." *Stachlowski v. Stach*, 328 N.C. 276, 285, 401 S.E.2d 638, 644 (1991). Our standard of review is whether competent evidence exists to support the trial court's findings of fact and whether the findings support the conclusions of law. *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001). The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo*. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

## IV.  UDP

Defendant argues the trial court erred by concluding it engaged in UDP. The trial court concluded:

> 5. Yokeley's solicitation of the cable installation work at [defendant's] Tupelo plant in January 2004 constituted an interference with [plaintiff's] prospective advantage and a diversion of a business opportunity [plaintiff] would otherwise have obtained, and constituted an unfair or deceptive trade practice in trade or commerce of North Carolina by Yokeley *in which [defendant], through its IT director, Bridges, knowingly participated.*

> . . . .

> 8. Yokeley's solicitation on or after February 11, 2004, on behalf of Fleet of cable installation work in connection with [defendant's] new Greensboro project constituted an interference with [plaintiff's] prospective advantage and a diversion of a business opportunity [plaintiff] might otherwise have obtained, and constituted an unfair or deceptive trade practice in trade or commerce in North Carolina by Yokeley *in which [defendant], through its IT director, Bridges, knowingly participated.*

> . . . .

10. [Plaintiff] suffered actual damages as a proximate result of Yokeley's [and defendant's] unfair and deceptive acts and practices in North Carolina[.]

(Emphasis supplied). Defendant asserts the trial court's findings of fact are insufficient to justify these conclusions of law. We agree.

Our Supreme Court has stated:

Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it *offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.*

*Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citations omitted) (emphasis supplied).

In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. The determination as to whether an act is unfair or deceptive is a question of law for the court. . . . Moreover, *some type of egregious or aggravating circumstances must be alleged and proved before the [Act's] provisions may [take effect].*

*Dalton v. Camp,* 353 N.C. 647, 656-57, 548 S.E.2d 704, 711 (2001) (internal citations and quotation omitted) (emphasis original and supplied).

The trial court concluded defendant had engaged in UDP by "knowingly participat[ing]" with Yokeley to: (1) solicit defendant's cabling business; (2) interfere with plaintiff's prospective advantage; and (3) divert plaintiff's business opportunity to perform cable installations at defendant's Tupelo and new Greensboro projects.

The trial court's findings of fact fail to support these conclusions. None of the trial court's extensive thirty findings of fact state how defendant "knowingly participated" with Yokeley to solicit defendant's cabling business or usurped a business opportunity from plaintiff.

The trial court's findings of fact support the opposite conclusion. The findings of fact show: (1) plaintiff was aware, through Yokeley, of defendant's approval process for the bids on any project with defendant; (2) no contract was ever entered into between defendant and plaintiff to perform work on defendant's Tupelo or new Greensboro projects; (3) defendant did not accept Yokeley's bids on these projects until after he had resigned from plaintiff on 6 February 2004; and (4) Yokeley was neither bound by a covenant not to compete nor non-solicitation agreement with plaintiff.

The trial court's findings of fact demonstrate defendant's only participation with Yokeley was Bridges's receipt and subsequent acceptance of Fleet's bids, which Yokeley had prepared, on defendant's Tupelo and new Greensboro projects. Defendant's acceptance of Yokeley's bids on 18 February 2004 and 11 February 2004 did not constitute an UDP. *See Chesapeake Microfilm, Inc. v. Eastern Microfilm Sales and Service*, 91 N.C. App. 539, 545, 372 S.E.2d 901, 904 (1988) (N.C. Gen. Stat. § 75-1.1 "is not so inclusive as to permit one competitor to claim unfair or deceptive trade practices on the ground that another competitor successfully bid for a contract."). The trial court also failed to find as fact any "egregious or aggravating circumstances" by defendant. *Dalton*, 353 N.C. at 657, 548 S.E.2d at 711.

Plaintiff argues and the trial court's judgment appears to infer the existence of a conspiracy between defendant and Yokeley to divert a business opportunity from plaintiff to Yokeley or Fleet. "A conspiracy has been defined as 'an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way.'" *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981) (quoting *State v. Dalton*, 168 N.C. 204, 205, 83 S.E. 693, 694 (1914)). To create an action for conspiracy, "a wrongful act resulting in injury to another must be done by one or more of the conspirators *pursuant to the common scheme and in furtherance of the common object.*" *Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951) (emphasis supplied) (quoting *Holt v. Holt*, 232 N.C. 497, 500, 61 S.E.2d 448, 451 (1950)).

The trial court failed to find, and no evidence in the record shows, "an agreement" between defendant and Yokeley. *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. The trial court also failed to find, and no evidence in the record shows, a "common scheme" between defendant and Yokeley to divert a business opportunity from plaintiff to Yokeley or Fleet. *Muse*, 234 N.C. at 198, 66 S.E.2d at 785. The trial

court failed to find or conclude, and no evidence in the record shows, that defendant and Yokeley were engaged in a conspiracy. The fact that defendant accepted Fleet's bids, which were prepared by Yokeley, and that Fleet performed and defendant paid for the work completed does not equate to "an agreement" or "common scheme" between defendant and Yokeley. *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337; *Muse*, 234 N.C. at 198, 66 S.E.2d at 785.

Plaintiff also argues defendant participated with Yokeley to divert a business opportunity because Bridges deceived plaintiff during his electronic communications with Shira Hedgepeth on 11 March 2004. We disagree.

The trial court found as fact:

20. On March 11, 2004, Shira Hedgepeth (Shira), on behalf of [plaintiff], contacted Bridges by e-mail . . . inquiring as to whether or not there were "Any updates on the cabling projects start date?" Bridges responded by e-mail on March 11, 2004, saying, "Nothing to date. Looks like the new CFO [Kame] may be looking at other solutions that do not require the upgrades." Shira further inquired of Bridges by e-mail on March 11, 2004, asking, "When will we know for sure?" Bridges responded by e-mail on March 11, 2004, saying, "I have no idea at this point. I told Bud [Hedgepeth, Shira's husband and President of [plaintiff]] that until I hear from the CXOs [i.e., [defendant's] chief executive officers], and Bud hears from me, all bets are off." Shira responded by e-mail late on March 11, 2004, saying, "We just want to make sure we do not overbook ourselves so we needed to check. Thanks for your help." Early on March 12, 2004, Bridges responded to Shira saying, "I think at this point you need to plan as though it is not going to happen, which is a real possibiliiy. I understand if we come back later we will go into the scheduling que." . . . At the time of the aforesaid e-mail exchange, Bridges was aware that [defendant] had contracted with Fleet (through Yokeley) on February 18, 2004, to provide the cabling installation work at [defendant's] Tupelo facility on a proposal that was essentially identical to [plaintiff's] bid to do that work dated July 28, 2003. He was also aware that [defendant] had accepted Fleet's February 11, 2004, proposal on [defendant's] new [Greensboro] project. However, Bridges did not advise Shira, nor anyone else at [plaintiff], that Fleet was then doing, or about to do, the work on both the Tupelo . . . and the new [Greensboro] projects.

Deceptive acts can constitute UDP, but "recovery according to [N.C. Gen. Stat. § 75-1.1 and 75-16] is limited to those situations when a plaintiff can show that plaintiff detrimentally relied upon a statement· or misrepresentation and he or she suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1990) (internal citation and quotation omitted), *disc. rev. denied*, 328 N.C. 89, 402 S.E.2d 824 (1991).

Here, the trial court failed to find as fact, and no evidence shows, plaintiff "detrimentally relied upon" Bridges's statement. *Id.* As the trial court's findings of fact indicate, at the time of this communication, defendant had already accepted plaintiff's competitor's bids on 11 February 2004 and 18 February 2004. Also, the trial court failed to find as fact, and no evidence tends to show, plaintiff "suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Id.*

Until all conditions precedent were satisfied, no contract could or did exist between plaintiff and defendant. No evidence tends to show defendant would have accepted plaintiff's bid or was under any restraints from accepting any competitors' bids. At the time of the awarding of the .contracts for the Tupelo and new Greensboro projects, Fleet and Yokeley were plaintiff's competitors. Defendant cannot be placed at risk for accepting one competitor's bid over another. *Chesapeake Microfilm*, 91 N.C. App. at 545, 372 S.E.2d at 904. Such risk is beyond what the law requires and is contrary to Chapter 75 of the North Carolina General Statutes. *Id.*

### V. Conclusion

The trial court's findings of fact, and the evidence in the record, fails to support the trial court's conclusions of law that defendant engaged in UDP. In light of our holding, we do not reach defendant's remaining assignments of error, nor do we reach plaintiff's cross assignment of error. The trial court's judgment is reversed.

Reversed.

Judges HUNTER and JACKSON concur.