IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-652

Filed: 16 February 2016

Guilford County, No. 12 CVS 5505

HERON BAY ACQUISITION, LLC, Plaintiff,

v.

UNITED METAL FINISHING, INC., CLAUDE T. CHURCH, and CATHERINE H. CHURCH, Defendants.

Appeal by plaintiff from orders entered 7 May 2014 and 30 September 2014, and judgment entered 10 November 2014, by Judge James L. Gale, Chief Special Superior Court Judge for Complex Business Cases, in Guilford County Superior Court. Heard in the Court of Appeals 18 November 2015.

*Nancy Schleifer, for plaintiff-appellant.*

*Tuggle Duggins P.A., by Jeffrey S. Southerland, Denis E. Jacobson, and Sarah H. Negus, for defendants-appellees.*

ZACHARY, Judge.

Heron Bay Acquisitions, Inc., (plaintiff) appeals from judgment entered on plaintiff's claims against United Metal Finishing, Inc., Claude Church, and Catherine Church (defendants). Plaintiff also appeals from pretrial orders granting partial summary judgment for defendants and granting defendants' motion *in limine* to exclude certain evidence. On appeal plaintiff argues that the trial court erred by dismissing his claims for unfair or deceptive trade practices, by dismissing plaintiff's

claims for breach of contract based on violation of the covenant of good faith and fair dealing and violation of the contract's provisions regarding environmental warranties, and by granting defendants' motion to exclude evidence. We conclude that plaintiff's arguments lack merit and that the judgment should be affirmed.

## I. Background

Plaintiff is an Ohio-based LLC owned by Scott Lowrie. United Metal Finishing is a metal plating business based in Greensboro and owned by defendant Claude Church. On 17 June 2011, the parties entered into an Asset Purchase Agreement (APA) and an accompanying real estate purchase contract in anticipation of plaintiff's purchase of United Metal Finishing and its associated real estate. The APA included provisions that (1) addressed defendants' representations about the property's environmental condition; (2) gave plaintiff the exclusive right to purchase United Metal Finishing, by preventing defendants from negotiating with other potential purchasers, and; (3) gave either buyer or seller the right to terminate the APA after 1 November 2011, if the sale of United Metal Finishing had not taken place by then. The APA stated that such termination would be without liability to either party, "provided however, that if such termination shall result from . . . a willful breach by any party to this Agreement, such party shall be fully liable for any and all losses, costs, claims, or expenses, incurred or suffered by the other parties as a result of such failure or breach."

Because United Metal Finishing's metal plating business had caused pollution, the APA was structured around the "Brownfields" program, sponsored by the North Carolina Department of Natural Resources (DENR). Under the Brownfields program, a purchaser of contaminated land who enters into a Brownfields Agreement with DENR is absolved of liability for historic contamination. The APA made the acquisition of a Brownfields Agreement a prerequisite to the sale of United Metal Finishing. It typically takes between eighteen and twenty-four months to obtain a Brownfields Agreement with DENR. *See Paradigm Fin. Group, Inc. v. Church*, 2014 NCBC 16, *12 (2014) (companion case) (unpublished). As of 1 November 2011, the parties had not obtained a Brownfields Agreement or closed on the sale of United Metal Finishing. Under the terms of the APA, either party was free to terminate the APA after this date.

Defendants terminated the APA on 17 February 2012, at which time DENR had yet to prepare a draft Brownfields Agreement. On 16 April 2012, plaintiff filed suit against defendants, seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance of the APA. On 16 April 2012, the case was designated a Complex Business Case and assigned to the trial court. During discovery, plaintiff obtained information suggesting that after the parties signed the APA, defendants had discussions with other parties about the possibility of selling United Metal Finishing to a buyer other than plaintiff. After

learning this, plaintiff filed an amended complaint which dropped the claim for specific performance and added a claim for violation of the Unfair or Deceptive Trade Practices Act (UDTPA claim), based on defendants' violation of § 4.1.7 of the APA. This provision, known as a "no-shop clause," stated that after signing the APA and until closing or termination of the agreement, defendants would not

> directly or indirectly solicit or engage in negotiations or discussions with, disclose any of the terms of this Agreement to, accept any offer from, furnish any information to, or otherwise . . . participate with, any person or organization . . . regarding any offer or proposal with respect to the acquisition . . . of the Business . . . [and] will promptly notify Purchaser of any such discussion, offer, or proposal. . . .

On 2 December 2013, the parties filed cross-motions for summary judgment. Following a hearing conducted on 20 February 2014, the trial court entered an order on 7 May 2014 denying plaintiff's motion for summary judgment, and granting partial summary judgment for defendants. The trial court entered summary judgment for defendants on plaintiff's claims for UDTPA based on violation of the no-shop clause, and its claims for breach of contract based on defendants' alleged violation of environmental warranties in the APA, undue delay of the Brownfields process, and breach of the implied covenant of good faith and fair dealing. The trial court denied defendant's motion for summary judgment on plaintiff's claims for breach of contract based on defendants' violation of the no-shop clause, failure to report customer concerns, and unauthorized purchase of equipment, and plaintiff's UDTPA claim

based on defendants' misappropriation of a marketing brochure prepared by plaintiff. On 30 September 2014 the trial court granted defendants' motion *in limine* to exclude evidence of defendants' late payments to an environmental consultant, and defendants' post-termination discussions with prospective buyers of United Metal Finishing.

The trial on plaintiff's remaining claims began on 8 October 2014. On 16 October 2014, the jury returned verdicts finding that (1) defendants United Metal Finishing and Claude Church, but not Catherine Church, had breached the no-shop provision of the APA; (2) defendants' termination of the APA did not result from the breach of the no-shop provision; (3) defendants had misappropriated marketing materials created and owned by plaintiff; and (4) plaintiff was entitled to $500.00 in damages for defendants' misappropriation of plaintiffs' marketing materials. On 14 November 2014, the trial court entered judgment in accordance with the jury's verdicts. On 4 December 2014, plaintiff appealed from the judgment, the summary judgment order, and the order on defendants' motion *in limine*.

## II. UDTPA Claim Based on Violation of the APA's No-Shop Clause

Plaintiff argues first that the trial court erred by granting summary judgment for defendants on plaintiffs' claim seeking damages for UDTPA based on defendants' violation of the APA's no-shop clause and defendants' "deception" about the violation. We conclude that plaintiff's argument lacks merit.

## A. Standard of Review

Pursuant to N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013), summary judgment is properly entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "According to well-established North Carolina law, summary judgment is appropriate when 'a claim or defense is utterly baseless in fact' or 'where only a question of law on the indisputable facts is in controversy.'" *Williams v. Houses of Distinction, Inc.*, 213 N.C. App. 1, 4, 714 S.E.2d 438, 440 (2011) (quoting *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971) (internal citations omitted). "All facts asserted by the [nonmoving] party are taken as true and . . . viewed in the light most favorable to that party[.]" *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citations omitted). "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 448, 579 S.E.2d 505, 507 (2003) (internal quotation omitted). "Our standard of review of an appeal from summary judgment is *de novo*[.]" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

## B. Discussion

Plaintiff appeals from the trial court's summary judgment order dismissing his UDTPA claim. On appeal, plaintiff does not argue that there are genuine issues of material fact, but that the undisputed facts did not entitle defendants to summary judgment. We disagree.

N.C. Gen. Stat. § 75-1.1(a) (2013) provides that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." The elements of an unfair or deceptive trade practice are: "(1) an unfair or deceptive act or practice by [the] defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to [the] plaintiff." *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 357, 578 S.E.2d 692, 694 (2003). "It is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract. Our Supreme Court has also determined that, as to these elements, 'some type of egregious or aggravating circumstances must be alleged and proved before the [Act's] provisions may [take effect].' " *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 171, 684 S.E.2d 41, 49 (2009) (quoting *Business Cabling, Inc. v. Yokeley*, 182 N.C. App. 657, 663, 643 S.E.2d 63, 68, *disc. rev. denied*, 361 N.C. 567, 650 S.E.2d 599 (2007) (internal quotation omitted)) (other citation omitted). Moreover, "[r]ecovery will not be had . . . where the complaint fails to demonstrate that the act of deception proximately resulted in some adverse impact or actual injury to the plaintiffs." *Walker v. Sloan*, 137 N.C. App. 387, 399, 529 S.E.2d 236, 245 (2000) (citing *Miller v. Ensley*, 88 N.C.

App. 686, 365 S.E.2d 11 (1988)). For example, in *Melton v. Family First Mortgage Corp.*, 156 N.C. App. 129, 135, 576 S.E.2d 365, 370, *aff'd per curiam*, 357 N.C. 573, 597 S.E.2d 672 (2003), the plaintiff filed an UDTPA claim against the defendant based on a contention that the defendant had improperly backdated loan application documents. This Court upheld summary judgment for the defendant:

> Assuming that the loan application documents were backdated, however, plaintiff has failed to present any evidence of harm. As stated previously, a necessary element for a claim under N.C. Gen. Stat. § 75-1.1 is that the unfair or deceptive act or practice proximately caused actual injury to the claimant.

(citation omitted). Our review of the record indicates that plaintiff did not produce evidence that defendants engaged in an unfair or deceptive act or practice, or that plaintiff suffered damages from defendants' alleged wrongdoing. Plaintiff's UDTPA claim is based upon defendant's violation of the no-shop clause of the APA.[1] Absent this contractual provision, however, defendants would have been free to discuss possible business dealings with others as they saw fit and without any obligation to disclose such discussions to plaintiff. In addition, plaintiff identifies no aggravating circumstances that might elevate this breach of contract to a UDTPA claim. " 'Substantial aggravating circumstances' must attend the breach in order to recover under the Act. A violation of Chapter 75 is unlikely to occur during the course of

---

[1] Plaintiff contends on appeal that its "UDTPA claim is based on deception and not on the contractual claim." Plaintiff's allegations of deception, however, relate solely to defendants' failure to disclose violations of the no-shop clause.

contractual performance, as these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties." *Mitchell v. Linville*, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623-24 (2001) (quoting *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992) (internal quotation omitted)), and citing *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000)). Plaintiff has failed to produce evidence of anything more than a simple breach of contract.

In addition, plaintiff produced no evidence that defendants' breach of the APA's no-shop clause caused any harm to plaintiff. There is no evidence that defendants' contacts with other parties led to an agreement between defendants and another business entity, and plaintiff does not allege that, for example, defendants tried to renegotiate the APA with plaintiff, demanded a higher purchase price from plaintiff, or attempted to use the possible interest of other parties as leverage to obtain concessions from plaintiff. Indeed, it is undisputed that plaintiff was unaware of defendants' conversations with other possible buyers until after plaintiff had filed suit against defendants. Moreover, the jury found that defendants' termination of the APA did not result from defendants' violation of the no-shop clause, barring relitigation of this issue in the context of an UDTPA claim:

> Under the . . . doctrine of collateral estoppel, also known as 'estoppel by judgment' or 'issue preclusion,' the

> determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding.

*Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citing *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 434, 349 S.E.2d 552, 560 (1986)) (other citation omitted). Defendants' discussions with other possible buyers, while a technical violation of the no-shop clause, do not appear to have resulted in any change in the parties' relationship. We conclude that plaintiff has failed to articulate any damages resulting from defendants' breach of the no-shop clause. Because plaintiff failed to produce evidence that defendants engaged in an unfair or deceptive act or practice, that defendants' violation of the no-shop clause was accompanied by aggravating circumstances, or that plaintiff was harmed by defendants' breach of contract, the trial court did not err by granting summary judgment for defendants on plaintiff's UDTPA claim based on defendants' violation of the no-shop clause.

In reaching this conclusion, we have carefully considered plaintiff's arguments for a contrary result. Plaintiff argues that it produced evidence of damages consisting of (1) the business expenses plaintiff incurred in pursuing the APA and trying to obtain a Brownfields Agreement, and (2) the "lost profits" that plaintiff might have made if defendants had not terminated the APA. " 'The word 'damages' is defined as compensation which the law awards for an injury[;] 'injury' meaning a wrongful act which causes loss or harm to another.' " *Tyll v. Berry*, __ N.C. App. __, __, 758 S.E.2d

- 10 -

411, 420 (quoting *Cherry v. Gilliam*, 195 N.C. 233, 235, 141 S.E. 594, 595 (1928)), *disc. review denied*, 367 N.C. 532, 762 S.E.2d 207 (2014). Plaintiff fails to advance a persuasive argument to explain why its ordinary expenses or hypothetical lost profits were "damages" resulting from a wrongful act of defendants, given that the jury found that defendants' termination of the APA did not result from defendants' breach of contract. Plaintiff's assertion that it suffered damages lacks merit.

We have also reviewed the cases cited by plaintiff and conclude that they are easily distinguishable and do not require reversal of the trial court's dismissal of plaintiff's UDTPA claim based on violation of the no-shop clause. In *Atlantic Mgmt. Corp. v. Dunlea Realty Co.,* 131 N.C. App. 242, 507 S.E.2d 56 (1998), the plaintiff purchased accounts "consisting of the right to receive payment from owners of rental property in exchange for management services." *Atlantic*, 131 N.C. App. at 244, 507 S.E.2d at 59. The defendant learned prior to closing that certain clients planned to hire a different management company, but failed to reveal this to plaintiff until after the closing. There was no dispute over the existence of damages, and the defendant intentionally concealed a fact that was material to the plaintiff's decision to proceed with the purchase. In *Walker v. Sloan*, the defendants engaged in a variety of dishonest and, in some cases, illegal acts. Significantly, in *Walker*, this Court upheld summary judgment in favor of one of the defendants on the grounds that because the proposed transaction failed to occur, "[plaintiffs] cannot show any actual injury

resulting from the [defendant's] alleged omission [of material facts]." *Walker*, 137 N.C. App. at 400, 529 S.E.2d at 246. In this case, defendants' conversations with other possible buyers did not lead to an agreement between defendants and another party, or result in a change in plaintiff's status. We conclude that the trial court did not err by granting summary judgment for defendants on plaintiff's claim for UDTPA based on defendants' breach of the no-shop clause or its failure to disclose its discussions with others.

### III. Breach of Contract

Plaintiff argues next that the trial court erred by granting summary judgment for defendants on plaintiff's claims for breach of contract predicated on defendants' alleged breach of the implied covenant of good faith and fair dealing, and breach of the APA's provisions regarding defendants' warranties as to the environmental status of United Metal Finishing and its associated real estate. We disagree.

#### A. Breach of the Implied Covenant of Good Faith and Fair Dealing

" 'In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quoting *Brown v. Superior Court*, 34 Cal. 2d 559, 564, 212 P.2d 878, 881 (1949)). In this case, plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on the following: (1) in October 2011 the

environmental consultant hired by defendants was ready to file required documents with DENR as part of the parties' pursuit of a Brownfields Agreement, but (2) the consultant delayed filing the documents for several days, until defendants had paid a past due bill owed to the consultant. We conclude that these circumstances do not establish a *prima facie* case of violation of the covenant of good faith and fair dealing.

Plaintiff cites *Quantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007), *aff'd*, 290 Fed. Appx. 324 (11th Cir. Fla. 2008), in support of its argument. *Quantum* is not binding on this Court and we conclude that it is not persuasive, given that it involves a very different factual and legal situation. The parties in *Quantum* executed an APA with a no-shop clause and a clause allowing termination of the APA if the relevant transaction had not closed by a certain date. Unlike the APA in this case, however, the termination clause in *Quantum* provided that a party could not terminate the APA if it was in breach of its terms. After the defendant terminated the APA, the plaintiff sought specific performance and argued that, because the defendant had violated the no-shop clause before it terminated the APA, the purported termination was invalid. In this context, determination of whether the defendant had violated the no-shop clause was essential to establishing plaintiff's entitlement to specific performance. In addition, correspondence between the defendant and another party indicated defendant's intention to deliberately sabotage the APA in order to contract with the other party. In the present case,

however, defendants' breach of the no-shop clause did not invalidate defendants' termination of the APA, absent proof that the termination resulted from the breach. Moreover, plaintiff does not seek specific performance, and there is no evidence that defendants had an agreement with another party. We conclude that the *Quantum* case does not persuade us to reverse the trial court.

Plaintiff speculates that defendants had an improper motive for this brief delay, but does not support this conjecture with evidence. Plaintiff also fails to articulate any way in which this brief delay affected the sequence of events, inasmuch as DENR did not begin reviewing the documents for several weeks after they were submitted, and had not yet drafted a Brownfields Agreement when defendants terminated the APA three months later. Plaintiff identifies no evidence that defendants gained an advantage or that plaintiff suffered damages as a result of the delay in submitting documents to DENR. The trial court did not err by granting summary judgment for defendants on plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### B. Breach of the APA's Environmental Warranties

The trial court stated in its summary judgment order that:

> . . . [United Metal Finishing] and the Churches made representations and undertook indemnity obligations in the [APA] to protect Heron Bay's post-acquisition liabilities. . . . [United Metal Finishing] represented that: (1) no hazardous materials were used in the business; (2) no hazardous materials were released on the Property; (3)

[United Metal Finishing] was in compliance with all
relevant environmental laws; (4) Defendants would comply
with all relevant environmental laws going forward [and];
(5) Defendants knew of no liabilities resulting from
environmental violations[.] . . . Defendants promised to
indemnify Plaintiff for any liability resulting from
Defendants' failures to comply with these representations.

Any remedy for inaccurate representations was limited by
the "Environmental Exceptions" listed in the APA and
RPA, which provide that Defendants would indemnify
Heron Bay for any liability it incurred as a result of
environmental breaches for which Heron Bay would not
receive Brownfield immunity.

Plaintiff argues that defendants breached the APA's provisions concerning
environmental warranties. However, because the sale of United Metal Finishing did
not take place, plaintiff was never exposed to potential liability based on defendants'
alleged breach of these contractual provisions. This argument lacks merit.

IV. Motion *in Limine*

Plaintiff's final argument is that the trial court erred by granting defendants'
motion *in limine* to exclude evidence that submission of the Brownfields materials
was delayed until defendants had paid their consultant. Plaintiff contends that this
evidence was part of plaintiff's proof for both the UDTPA claim and the claim for
breach of the implied covenant of good faith and fair dealing. As discussed above, we
conclude that the trial court did not err by granting summary judgment for
defendants on plaintiff's claim for breach of the implied covenant of good faith and
fair dealing, based on defendants' delay in paying the consultant. We have also held

that the trial court did not err by granting summary judgment for defendants on plaintiff's UDTPA claim; consideration of the evidence regarding defendants' late payments does not persuade us to reach a different conclusion. In addition, plaintiff advances no argument regarding the standard for admissibility of such evidence. We conclude that this argument lacks merit.

For the reasons discussed above, we conclude that the trial court did not err and that its judgment and orders should be

AFFIRMED.

Judges CALABRIA and ELMORE concur.