PJC Mgmt. Grp., LLC v. MAACO Franchisor SPV LLC, 2026 NCBC 37.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV059334-590

PJC MANAGEMENT GROUP, LLC,
a North Carolina limited liability
company; PHILLIP J. COLLINS;
J&A COMPANIES INC., a Nevada
corporation; PVA CAPITAL LLC, a
Virginia limited liability company;
SHORE CAPITAL, LLC, a Virginia
limited liability company; LEWVIA
INC., a Texas corporation; HOLLAS
ENTERPRISES, LLC, a Texas
limited liability company; MFINCH
& WPERRY SOLUTIONS, INC., a
Georgia Corporation; WILLIAM
PERRY, and MICHAEL FINCH,

        Plaintiffs,

v.

MAACO FRANCHISOR SPV LLC, a
Delaware limited liability company,
formerly known as MAACO
FRANCHISING, LLC and
MAACO FRANCHISING, INC;
DRIVEN BRANDS INC.; and
DRIVEN SYSTEM LLC,

        Defendants.

**ORDER AND OPINION
ON MOTION TO DISMISS**

1. This case arises from a contract dispute between a franchisor and some of its franchisees. Defendants have moved to dismiss the complaint in its entirety under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (*See* ECF No. 9.) For the following reasons, the Court **GRANTS in part and DENIES in part** the motion.

*Morningstar Law Group, by Keith P. Anthony, and The Law Office of Mario L. Herman, by Mario L. Herman and Gregory O. Herman, for Plaintiffs PJC Management Group, LLC, Phillip J. Collins, J&A Companies Inc., PVA Capital LLC, Shore Capital, LLC, LEWVIA Inc., Hollas Enterprises, LLC, MFinch & WPerry Solutions, Inc., William Perry, and Michael Finch.*

*Robinson, Bradshaw & Hinson, P.A., by Adam K. Doerr, and DLA Piper LLP (US), by Kyle Orne, John F. Verhey, and Madeline A. Cordray, for Defendants MAACO Franchisor SPV LLC, Driven Brands Inc., and Driven Systems LLC.*

Conrad, Judge.

## I.
## BACKGROUND

2. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following background takes as true the allegations in the complaint.

3. Defendant MAACO Franchisor SPV LLC is the franchisor of a chain of vehicle painting and auto body repair businesses. Defendants Driven Systems LLC and Driven Brands, Inc. are MAACO's direct and indirect parent companies. (*See* Compl. ¶¶ 16–18, 35, ECF No. 3.)

4. Plaintiffs are franchisees of MAACO. As a group, they own and operate nearly fifty franchises across the country, including in the Carolinas, Georgia, Texas, California, and other States. (*See* Compl. ¶¶ 15, 26–34.)

5. There are dozens of franchise agreements at issue (essentially, one for each franchise), but they are all substantially similar. Under these agreements, Plaintiffs must pay MAACO weekly marketing fees. MAACO is supposed to use the fees for nationwide advertising and other marketing efforts, which may include not only the costs of ads but also the costs of developing and administering marketing programs. The goal is "to maximize general public recognition and patronage" of the MAACO brand "in the manner determined to be most effective by MAACO." To ensure accountability, MAACO must "provide an annual statement of receipts and

disbursement with respect to marketing fees" when requested by a franchisee. (Franchise Agrmt. § 6.1(B), ECF No. 10.1; *see also* Compl. ¶¶ 40, 41.)

6. MAACO's franchise disclosures include guarantees by Driven Systems and Driven Brands, in which each "absolutely and unconditionally guarantee[d] to assume the duties and obligations" of MAACO under the franchise agreements. Each "guarantee continues until all such obligations of [MAACO] . . . are satisfied or until the liability of [MAACO] to its franchisees under the Franchise Agreement has been completely discharged, whichever first occurs." (Compl. ¶¶ 24, 25.)

7. Administration of the advertising fund has been a source of friction for MAACO and its franchisees since 2020. Around that time, MAACO allegedly scaled back its television advertising, shuttered its in-house ad agency in favor of using independent agencies, and raised administrative fees while cutting marketing expenditures. These changes did not sit well with Plaintiffs, who began complaining of a sharp downturn in customer business. When Plaintiffs and other franchisees demanded an accounting of receipts and disbursements, MAACO balked. (*See* Compl. ¶¶ 43–45, 50, 52, 54–56.)

8. By 2024, a group of franchisees was so displeased with what they perceived as MAACO's stonewalling that they formed an association to coordinate their communications with the franchisor. Through counsel, the association accused MAACO of a "lack of transparency" and lamented the "climate of distrust" that had ensued. In mid-2025, MAACO responded by providing a massive spreadsheet. Although the complaint does not detail the spreadsheet's contents, Plaintiffs allege

that the spreadsheet "raised more questions than it answered" and "failed to address the fundamental question of where the Plaintiffs' advertising dollars went." Indeed, Plaintiffs sought further explanation, specifically asking about anomalous transactions appearing in the spreadsheet as well as unexplained spikes in administrative fees. As alleged, MAACO did not respond to this inquiry. (Compl. ¶¶ 45–49, 57–59.)

9. As this dispute over the advertising fund was coming to a head, Plaintiffs began to question certain charges that MAACO had assessed against them. According to Plaintiffs, many charges were unsubstantiated, and MAACO acknowledged accounting errors stemming from its transition to a new software system. (*See* Compl. ¶¶ 63, 64.)

10. Plaintiffs now believe that MAACO is withholding data about its advertising programs because it has been misusing its franchisees' weekly fees for purposes unrelated to advertising and marketing programs. In their complaint, Plaintiffs assert claims against MAACO for breach of the franchise agreements, breach of the implied covenant of good faith and fair dealing, accounting, unfair or deceptive trade practices under N.C.G.S. § 75-1.1, and declaratory judgment. Plaintiffs also claim that Driven Systems and Driven Brands, having guaranteed MAACO's performance, are jointly liable for any breach of the franchise agreements.

11. MAACO, Driven Systems, and Driven Brands have moved to dismiss all claims against them. Their motion is fully briefed, and the Court held a hearing on 1 April 2026. All parties were represented by counsel. The motion is ripe.

## II.
## ANALYSIS

12. A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

13. In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted), but need not accept as true any "conclusions of law or unwarranted deductions of fact," *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citation and quotation marks omitted). The Court may also "consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers," without converting the motion to a motion for summary judgment. *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

### A. Contract Claims

14. The complaint includes a set of interrelated claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. In a nutshell, Plaintiffs claim that MAACO breached the franchise agreements and the implied covenant by misappropriating the franchisees' weekly

advertising fees and withholding annual statements of advertising-related receipts and disbursements. Plaintiffs seek both damages and declaratory relief based on the alleged breaches. And they also claim that Driven Brands and Driven Systems are jointly liable for any breach of the franchise agreements.

15. The elements of a claim for breach of contract are the existence of a valid contract and a breach of that contract's terms. *See Poor v. Hill*, 138 N.C. App. 19, 26 (2000). When these elements are alleged, "it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 166 N.C. App. 129, 134 (2004); *see also Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *11 (N.C. Super. Ct. June 19, 2019) ("[S]tating a claim for breach of contract is a relatively low bar.").

16. MAACO concedes that the franchise agreements are valid but disputes whether the complaint's allegations, if true, establish a breach. All that is alleged, according to MAACO, is that it made an unpopular decision to switch from an in-house advertising agency to an independent agency, which increased administration costs and reduced the amount spent directly on ads placed on television, radio, and other media. MAACO insists that this decision was a legitimate exercise of its broad discretion to administer advertising and marketing programs under the franchise agreements. On that basis, it contends that the claim for breach of contract must be dismissed. It goes on to argue that the claims for breach of the implied covenant and for declaratory judgment must be dismissed as well because they are bound up with the claim for breach of contract.

17.    But MAACO construes the complaint's allegations too narrowly.  Plaintiffs' beef with MAACO is not simply that it made bad decisions about how to administer its marketing programs and allocate funds among different types of media.  Rather, Plaintiffs allege that MAACO has misappropriated a portion of the collected fees, putting the money toward impermissible uses that have nothing at all to do with advertising or marketing more broadly.  As the complaint puts it, "MAACO has siphoned funds from the advertising funds/marketing fees paid by Plaintiffs for the improper purpose of cutting . . . administrative and overhead costs or to pay for other expenses unrelated to and not benefiting the MAACO franchise system."  (Compl. ¶ 42.)

18.    MAACO objects that this is a conclusory, unreasonable inference, alleged only upon information and belief.  The Court disagrees.  North Carolina remains a notice pleading jurisdiction, and our Supreme Court has long held that a plaintiff "may allege facts based on actual knowledge, or upon information and belief." *Myrtle Apartments, Inc. v. Lumbermen's Mut. Casualty Co.*, 258 N.C. 49, 51 (1962).  Here, Plaintiffs have alleged ample factual support for their belief that MAACO has misused funds.  Viewed in the light most favorable to Plaintiffs, the allegations show that MAACO (1) radically reduced expenditures on ads, (2) refused for several years to provide contractually required statements of advertising-related receipts and disbursements, (3) eventually produced data that revealed anomalous transactions without clarifying how fees collected from franchisees were spent, (4) refused to explain the anomalies, and (5) assessed spurious charges against franchisees through

a faulty accounting system. (*See* Compl. ¶¶ 45, 52, 54, 55, 58, 59, 61, 63.) Together, these allegations support a reasonable inference that MAACO misused advertising fees collected from its franchisees.

19. Moreover, MAACO does not contest the adequacy of the allegation that it failed to provide annual statements of receipts and disbursements, as required by the franchise agreements. This allegation, taken as true, independently supports the claim for breach of contract.

20. The Court therefore denies the motion to dismiss the claim for breach of contract against MAACO. And because MAACO offers no independent grounds to dismiss the claims for breach of the implied covenant and for declaratory judgment, it follows that these claims survive as well. *See, e.g.*, *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38 (2018) ("Where a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract, we treat the former claim as part and parcel of the latter." (citation and quotation marks omitted)).

21. This does not mean that Plaintiffs have adequately stated a claim against Driven Brands and Driven Systems, however. The complaint says next to nothing about these two defendants, alleging only that they guaranteed MAACO's contractual duties and obligations and therefore must be jointly liable for MAACO's breaches of the franchise agreements. Such threadbare allegations are insufficient even under a simple notice-pleading standard. In fact, there is so little in the complaint that the nature of the claim against Driven Brands and Driven Systems is unclear. The

complaint does not state, for example, that either company breached its guaranty. As best the Court can tell, Plaintiffs' theory is that Driven Brands' and Driven Systems' guarantees *would* apply to a monetary judgment *if* one is entered against MAACO. That theory, if it is what Plaintiffs intend, is not ripe. There is no judgment yet; the pleadings haven't even closed. Given the vague, conclusory quality of the allegations, the Court dismisses without prejudice these contract-related claims to the extent that they are asserted against Driven Brands and Driven Systems. *See, e.g., Davis v. Davis Funeral Serv., Inc.*, 2023 NCBC LEXIS 133, at *5 (N.C. Super. Ct. Oct. 25, 2023) (dismissing claims when the plaintiff did "not allege that [certain defendants] committed any wrongful acts"); *Gateway Mgmt. Servs. v. Carrbridge Berkshire Grp., Inc.*, 2018 NCBC LEXIS 45, at *26 (N.C. Super. Ct. May 9, 2018) (dismissing claim due to "threadbare allegations").

### B. Section 75-1.1

22. Next, the Court turns to Plaintiffs' section 75-1.1 claim, which is also based on allegations that MAACO breached the franchise agreements by misusing or misappropriating the weekly advertising fees paid by franchisees. Plaintiffs further allege that MAACO concealed its breach by ignoring the franchisees' requests for an accounting of advertising-related expenditures.

23. By statute, "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." N.C.G.S. § 75-1.1. Though broad, this language is "not intended to apply to all wrongs in a business setting." *Dalton v. Camp*, 353 N.C. 647, 657 (2001). Our appellate courts have stressed that "a mere breach of contract, even if

intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). To state a claim, the plaintiff must also allege "substantial aggravating circumstances attending the breach." *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368 (2000) (citation and quotation marks omitted).

24. With rare exception, a violation of section 75-1.1 "is unlikely to occur during the course of contractual performance." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C. App. 378, 383 (2016). "One reason for this is that disputes concerning the circumstances of the breach are often bound up with one party's exercise of perceived rights and remedies under the contract." *Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, at *10–11 (N.C. Super. Ct. Oct. 11, 2017). On that basis, our courts have held that "[a] party's threats to terminate, efforts to encourage another to continue contractual performance while planning to breach, and refusal to otherwise meet contractual obligations do not rise to the level of aggravating circumstances." *Id.* at *11 (cleaned up); *see also Haddock v. Volunteers of Am., Inc.*, 2021 NCBC LEXIS 70, at *27 (N.C. Super. Ct. Aug. 25, 2021).

25. MAACO argues that the complaint does not adequately allege the sort of aggravating circumstances needed to convert an ordinary breach of contract into a violation of section 75-1.1. The Court agrees.

26. The only aggravating circumstance alleged is MAACO's failure to provide annual statements of receipts and disbursements for its advertising programs. But an express provision of the franchise agreements governs these annual statements.

(*See* Franchise Agrmt. § 6.1(B).) Even if MAACO withheld information that it was contractually required to provide, that would be, at most, an intentional breach of the agreements, not an aggravating circumstance. At no point does the complaint allege that MAACO destroyed information, provided false or misleading information, or took any other affirmative, deceptive action to deter the franchisees' investigation. Any dispute about the sufficiency of MAACO's disclosures to its franchisees is simply a dispute about the parties' contractual rights and obligations. *See, e.g.*, *Maxwell Foods, LLC v. Smithfield Foods, Inc.*, 2021 NCBC LEXIS 71, at \*27 (N.C. Super. Ct. Aug. 26, 2021) ("At most, these allegations show that Smithfield failed to disclose its breach, which is not sufficiently deceptive or egregious to support liability under section 75-1.1."); *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at \*20 (N.C. Super. Ct. Mar. 27, 2017) ("These allegations concern nothing more than disputes over the interpretation and performance of the Agreement, which includes specific provisions governing payment, rejection of unsuitable [goods], and the requirements for termination.").

27. Accordingly, the Court grants the motion to dismiss the section 75-1.1 claim. In its discretion, the Court dismisses this claim with prejudice. *See First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013) ("The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . .").

### C. Accounting

28. Last is Plaintiffs' accounting claim, in which they seek financial information regarding what they believe MAACO owes them. "[A]n equitable accounting may be

available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." *JT Russell & Sons, Inc. v. Russell*, 2024 NCBC LEXIS 37, at \*11 (N.C. Super. Ct. Feb. 28, 2024) (citation and quotation marks omitted). "It is a remedy, not an independent cause of action, and is available only if the plaintiff first shows that he lacks an adequate remedy at law and alleges facts in the complaint to that effect." *Elhulu v. Alshalabi*, 2021 NCBC LEXIS 44, at \*20 (N.C. Super. Ct. Apr. 29, 2021). The Court therefore grants without prejudice the motion to dismiss the accounting claim to the extent that it is pleaded as an independent cause of action. Whether Plaintiffs may be entitled to an accounting as a remedy is a question better addressed at a later stage.

## III.
## CONCLUSION

29. For all these reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss as follows:

    a. The Court **GRANTS** the motion to dismiss the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment to the extent that they are asserted against Driven Brands and Driven Systems. These claims are **DISMISSED** without prejudice. The Court **DENIES** the motion to dismiss the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment to the extent that they are asserted against MAACO.

b. The Court **GRANTS** the motion to dismiss the section 75-1.1 claim. This claim is **DISMISSED** with prejudice.

c. The Court **GRANTS** the motion to dismiss the accounting claim. This claim is **DISMISSED** without prejudice to Plaintiffs' right to seek an accounting as a remedy, if appropriate, at a later stage.

30. In addition, as previously ordered, (*see* ECF No. 17), the parties shall conduct their Business Court Rule 9.1 case management meeting no later than 7 May 2026.

**SO ORDERED**, this the 22nd day of April, 2026.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases